# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Honorable Marianne O. Battani |
| | |
| IN RE: WIRE HARNESS | Case No. 2:12-cv-00103-MOB-MKM |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203-MOB-MKM |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303-MOB-MKM |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403-MOB-MKM |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | Case No. 2:12-cv-00603-MOB-MKM |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703-MOB-MKM |
| IN RE: RADIATORS | Case No. 2:13-cv-01003-MOB-MKM |
| IN RE: STARTERS | Case No. 2:13-cv-01103-MOB-MKM |
| IN RE: SWITCHES | Case No. 2:13-cv-01303-MOB-MKM |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403-MOB-MKM |
| IN RE: MOTOR GENERATORS | Case No. 2:13-cv-01503-MOB-MKM |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603-MOB-MKM |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703-MOB-MKM |
| IN RE: INVERTERS | Case No. 2:13-cv-01803-MOB-MKM |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203-MOB-MKM |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603-MOB-MKM |
| | |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

# END-PAYOR PLAINTFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND ESTABLISHMENT OF A FUND FOR FUTURE LITIGATION EXPENSES

Settlement Class Counsel for End-Payor Plaintiffs ("EPPs")[1] hereby move the Court, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), for an award of attorneys' fees of 30% of the $224,680,350 settlement amount ("Settlement Amount"), reimbursement of certain litigation costs and expenses, and establishment of a fund to be used for future litigation costs expended for the benefit of the Classes.

Date: March 10, 2016                          Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

*/s/ Steven N. Williams*
Steven Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

---

[1] In granting preliminary approval of these settlements, the Court appointed Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP and Susman Godfrey L.L.P. Settlement Class Counsel. *See, e.g.*, Order Granting Preliminary Approval of Proposed Settlement with Sumitomo Defendants, *Wire Harness*, 2:12-cv-00103, ECF No. 419.

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
clangham@susmangodfrey.com

*Settlement Class Counsel and Interim Co-Lead Counsel for the Proposed End-Payor Plaintiffs Classes*

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*

3

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| IN RE: WIRE HARNESS | Case No. 2:12-cv-00103-MOB-MKM |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203-MOB-MKM |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303-MOB-MKM |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403-MOB-MKM |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | Case No. 2:12-cv-00603-MOB-MKM |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703-MOB-MKM |
| IN RE: RADIATORS | Case No. 2:13-cv-01003-MOB-MKM |
| IN RE: STARTERS | Case No. 2:13-cv-01103-MOB-MKM |
| IN RE: SWITCHES | Case No. 2:13-cv-01303-MOB-MKM |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403-MOB-MKM |
| IN RE: MOTOR GENERATORS | Case No. 2:13-cv-01503-MOB-MKM |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603-MOB-MKM |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703-MOB-MKM |
| IN RE: INVERTERS | Case No. 2:13-cv-01803-MOB-MKM |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203-MOB-MKM |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

**END-PAYOR PLAINTFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND ESTABLISHMENT OF A FUND FOR FUTURE LITIGATION EXPENSES**

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED...................................................................... vi

INTRODUCTION ................................................................................................... 1

    **A.**  The Settlements Achieved ........................................................................ 1

    **B.**  EPP Class Counsel's Vigorous Prosecution on Behalf of the EPP Classes ....................... 1

**I.**     AWARD OF ATTORNEYS' FEES .................................................................. 4

    **A.**  The Court Should Use the Percentage-of-the-Fund Approach ........................... 4

    **B.**  The Fee Requested by Settlement Class Counsel is Appropriate. ....................... 6

    **C.**  Consideration of the *Ramey* Factors Supports the Requested Fee.................... 7

        **1.**  EPP Class Counsel have Secured Valuable Benefits for the Proposed Settlement Classes.................................................................................... 8

        **2.**  Society has a Significant Stake in Awarding Reasonable Attorneys' Fees in this Litigation................................................................................ 9

        **3.**  EPP Class Counsel are Working on a Contingent Fee Basis. ....................... 10

        **4.**  The Complexity of the Litigation Supports the Requested Fee. .................... 11

        **5.**  Skill and Experience of Counsel. .................................................. 13

        **6.**  A Lodestar Crosscheck Confirms That The Requested Fee Is Reasonable. ............. 13

**II.**    SETTLEMENT CLASS COUNSEL SHOULD BE AUTHORIZED TO DISTRIBUTE FEES AMONG EPP CLASS COUNSEL ...................................................... 16

**III.**   THE PROPOSED FEE STRUCTURE MAXIMIZES EFFICIENCIES AND PREVENTS DOUBLE COUNTING ................................................................ 17

**IV.**  AWARD OF EXPENSES AND COSTS ...................................................... 20

    **A.**  A Pro Rata Allocation of Expenses Maximizes Efficiencies and Prevents Duplicate Billing ............................................................................... 21

    **B.**  Reimbursement of Costs Already Incurred.................................................. 22

    **C.**  Award of Future Litigation Expense Fund .................................................. 24

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla 2006) ......................................................................6

*Bailey v. AK Steel Corp.*,
    No. 06-cv-468, 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio Feb. 28, 2008) ...........................15

*Bessey v. Packerland Plainwell, Inc.*,
    No. 06-cv-95, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. Oct. 26, 2007)..............................6

*Blum v. Stenson*,
    465 U.S. 886 (1984)........................................................................................................5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)........................................................................................................4

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) .......................................................................................17

*In re Cardizem CD Antitrust Litig.*,
    No. 99-md-1278 (E.D. Mich. Nov. 26, 2002)...............................................................5

*Carroll v. Stettler*,
    No. 10-2262, 2011 U.S. Dist. LEXIS 121185 (E.D. Pa. Oct. 19, 2011) ................................15

*In re Air Cargo Shipping Serv. Litig.*,
    No. 06-md-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ...........................................4, 19

*In re Ampicillin Antitrust Litig.*,
    526 F. Supp. 494 (D.D.C. 1981) ..................................................................................6

*In re Automotive Refinishing Paint Antitrust Litig.*,
    No. 08-md-1426, 2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) ................................20

*In re Automotive Wire Harness Systems Antitrust Litig.*,
    867 F. Supp. 2d 1349 (J.P.M.L. 2012)......................................................................17

*In re Blech Sec. Litig.*,
    No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Nov. 27, 2002) ......................15

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006)................................................................................16

*In re California Micro Devices Sec. Litig.*,
    965 F. Supp. 1327 (N.D. Cal. 1997) ...........................................................................25

*In Re Caraco Pharm. Labs., Ltd. Sec. Litig.*,
    No. 09-cv-12830, ECF No. 96 (E.D. Mich. June 26, 2013) ..........................................5, 6

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................................4, 10, 13

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................................... *passim.*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  MDL No. 1917, 2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013) ........................12

*In re Corrugated Container Antitrust Litig.*,
  No. 81-md-310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ......................................9

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ............................................................... *passim.*

*In re Diet Drugs Prod. Liab. Litig.*,
  No. 99-md-1203, 2002 WL 32154197 (E.D. Pa., Oct. 3, 2002) ................................4

*In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245 (N.D. Ill. 1979),
  *aff'd in part and rev'd on other grounds*, 744 F.2d 1252 (7th Cir. 1984) ................9

*In Re General Motors Corp. Sec. and Derivative Litig.*,
  No. 06-md-1749, ECF No. 139 (E.D. Mich. Jan. 6, 2009) ....................................5

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  No. 10-cv-4038, 2011 U.S. Dist. LEXIS 130180 (N.D. Iowa Nov. 9, 2011) ....................6

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) .....................................................9, 24

*In re Linerboard Antitrust Litig.*,
  MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) .......................10

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..............................................................7

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) ....................9

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011) .......... *passim.*

*In re Packaged Ice Antitrust Litig.*,
  No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011) ..................24

*In Re Polyurethane Foam Antitrust Litig.*,
  No. 10-md-2196, 2015 U.S. Dist. LEXIS 23482 (N.D. Ohio Feb. 26, 2015) ....................13

*In re Polyurethane Foam Antitrust Litig.*,
  No. 10-md-2196, 2016 U.S. Dist. LEXIS 9609 (N.D. Ohio Jan. 27, 2016) .....................16

*In re Prandin Direct Purchaser Antitrust Litig.*,
  No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ...........................6, 7

*In re Prandin Direct Purchaser Antitrust Litig.*,
  No. 2:10-cv-12141, 2015 U.S. Dist. LEXIS 5964 (E.D. Mich. Jan. 20, 2015) .................15

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) .....................................................24

iii

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-md-2002, 2012 U.S. Dist. LEXIS 160764 (E.D. Pa. Nov. 9, 2012)...........................20

*In re S.E. Milk Antitrust Litig.*,
   No. 08-md-1000, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) .........................6

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   No. 12-md-2343, 2014 U.S. Dist. LEXIS 91661 (E.D. Tenn. June 30, 2014) .........................6

*In re Sulzer Orthopedics, Inc.*,
   398 F.3d 778 (6th Cir. 2005) .........................................................................................7

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999)............................................................................16

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 1029 (S.D. Ohio 2001) .......................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-1827, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 1, 2013)...........................12

*In re Trans Union Corp. Privacy Litig.*,
   629 F. 3d 741 (7th Cir. 2011) .....................................................................................11

*In re Vitamins Antitrust Litig.*,
   No. 99-md-1285, 2001 WL 34312839 (D.D.C. July 16, 2001) ..........................................6

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)........................................................................................16

*In re Wellbutrin SR Antitrust Litig.*,
   No. 04-5525, 2011 U.S. Dist. LEXIS 158833 (E.D. Pa. Nov. 21, 2011) ..............................7

*Isabel v. City of Memphis*,
   404 F.3d 404 (6th Cir. 2005) .......................................................................................14

*Kogan v. AIMCO Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ................................................................................6

*Kritzer v. Safelite Solutions, LLC*,
   No. 10-cv-0729, 2012 WL 1945144 (S.D. Ohio May 30, 2012)........................................10

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) .................................................................................24, 25

*Nichols v. SmithKline Beecham Corp.*,
   No. 00-6222, 2005 WL 950616 (E.D. Pa. April 22, 2005)................................................15

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ......................................................................................7

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ..................................................................................4, 8

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) .......................................................................................4, 5

iv

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
    No. 10-cv-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ..........................................5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................................7

*Van Horn v. Nationwide Prop. & Cas. Inc. Co.*,
    436 F. App'x 496 (6th Cir. 2011) ..............................................................................4

*Vendo Co. v. Lektro-Vend Corp.*,
    433 U.S. 623 (1977) ................................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................................................10

**Rules**

Fed. R. Civ. P. 2 ...........................................................................................................23

Fed. R. Civ. P. 23(h) ...........................................................................................1, 4, 23

Fed. R. Civ. P. 54(d)(2) ..............................................................................................1, 4

**Other Authorities**

*Remarks as Prepared for Delivery by Attorney General Eric Holder at Auto Parts*
    *Press Conference*, U.S. Department of Justice (Sept. 26, 2013) ...............................8

## STATEMENT OF ISSUES PRESENTED

1.      Should Settlement Class Counsel who have obtained $224,680,350 million in class settlements be awarded attorneys' fees equal to 30% of the settlement proceeds?

2.      Should Settlement Class Counsel be reimbursed for certain costs and litigation expenses incurred in pursuing the claims in this litigation?

3.      Should Settlement Class Counsel be permitted to establish a fund for future litigation expenses in the amount of roughly five percent of the settlement proceeds?

## INTRODUCTION

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Settlement Class Counsel respectfully request: (1) an award of attorneys' fees of 30% of the Settlement Amount; (2) reimbursement of certain expenses and costs incurred; and (3) the establishment of a fund to pay future litigation expenses. The scope of this litigation is unprecedented, and the results obtained by EPPs are extraordinary. The fees and expenses requested are fair and reasonable in light of the risks undertaken in this litigation, the effort and resources required to prosecute litigation of this enormous scope and magnitude, and the exceptional recovery obtained to date for the settlement classes.

### A.    The Settlements Achieved

The settlements by EPPs to date total $224,680,350, and resolve EPPs' claims against eleven Defendants and their affiliates ("Settling Defendants") in nineteen automotive parts cases, as set forth in the chart included at Appendix A.

These settlements provide the settlement classes with very substantial cash benefits and valuable cooperation from the Settling Defendants. These settlements resolve only a portion of EPPs' claims in this MDL litigation, *In re Automotive Parts Antitrust Litigation*, MDL 2311 ("Auto Parts Action"). These excellent results were only possible because of the dedication, effort, and skill of Settlement Class Counsel and the firms working at their direction (together, "EPP Class Counsel"), including their substantial multi-year investment of time and expenses.

### B.    EPP Class Counsel's Vigorous Prosecution on Behalf of the EPP Classes

This litigation is unique in its size and complexity. Antitrust litigation is inherently risky, with high stakes, and the ultimate outcome of this litigation has been, and still is, far from certain. From the outset, EPP Class Counsel have diligently worked to advance the claims of members of the EPP classes. EPP Class Counsel's vigorous prosecution of these claims is

1

particularly important because, despite Defendants' myriad guilty pleas, the United States Department of Justice ("DOJ") did not seek or obtain restitution for the victims of Defendants' unlawful conduct. Indeed, the criminal fines negotiated by the DOJ were determined in light of the fact that the EPPs would be seeking restitution for the victims. The guilty pleas each recite that "[i]n light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order . . . ." *See, e.g.*, Plea Agreement, Yazaki Corp., *United States v. Yazaki Corp.*, No. 2:12-cr-20064 (E.D. Mich. 2012), ECF No. 6. Thus, the ability of American consumers and other purchasers and lessees of new motor vehicles to recover monetary restitution rests squarely on EPP Class Counsel's shoulders.

Since 2012, attorneys for EPPs have worked long hours on this multifaceted litigation. It has been, and will continue to be, a huge undertaking. Their activities have included:

- Extensive research into the worldwide automotive parts industry, as well as the federal antitrust laws and the antitrust, consumer protection, and unjust enrichment laws of more than 30 states and the District of Columbia;

- Researching and drafting scores of class action complaints, including numerous amended complaints, incorporating extensive new factual information obtained as a result of additional factual investigation, document review, and proffers and interviews of witnesses made available by certain settling and cooperating Defendants;

- Reviewing and analyzing millions of pages of English and foreign language documents (many of which EPP Class Counsel were required to translate) produced by Defendants;

- Drafting and coordinating discovery by all Plaintiff groups against well over 100 Defendants as well as preparing and arguing numerous contested discovery motions;

- Meeting with Defendants' counsel in connection with factual proffers obtained pursuant to the cooperation provisions of settlement agreements or the Antitrust Criminal Penalty Enhancement Reform Act ("ACPERA"), interviewing key witnesses from various Defendant groups, including in federal prison in the United States;

- Coordinating the actions of EPPs, and sometimes of all Plaintiff groups, with the DOJ;

- Negotiating the terms of Defendants' subpoenas to non-plaintiff Auto Dealers and assisting in the preparation and service of numerous documents subject to Defendants' subpoenas;

- Obtaining, analyzing and producing thousands of pages of documents and data from 56 EPP class representatives, and responding to multiple rounds of detailed Interrogatories from ten separate sets of Defendants;

- Spearheading the negotiation and drafting of written discovery, discovery plans, protocols, and stipulations with Defendants and Plaintiffs' groups;

- Exchanging information and coordinating with counsel for Direct Purchaser Class Plaintiffs, Auto Dealer Class Plaintiffs, Truck Dealer Class Plaintiffs, City of Richmond, Ford Motor Company, and State Attorneys General regarding various issues;

- Preparing for and defending 46 EPP class representative depositions, with ten depositions still to be scheduled;

- Meeting and coordinating with EPP economic and industry experts to analyze facts learned through investigation and discovery;

- Working with econometricians to discuss and craft appropriate damages methodologies in preparation for class certification, motion practice, and computation of class-wide damages for purposes of trial;

- Drafting, serving, and negotiating non-party discovery directed to automobile manufacturers and distributors including discovery-related motion practice, in collaboration with defendants and other plaintiffs' groups over the course of many months;

- Performing the many tasks necessary to achieve these settlements, including: analyzing economic evidence and data and formulating settlement demands; engaging in extensive negotiations with the Settling Defendants involving dozens of in-person meetings, countless other communications, and in many instances working with the assistance of outside mediators; negotiating and preparing drafts of settlement agreements; and preparing escrow agreements for each settlement; and

- Crafting, in consultation with the EPP class notice expert, the extensive notice program that was approved by the Court.

(Joint Declaration of Hollis Salzman, Steven N. Williams, and Marc M. Seltzer in Support of

End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and

Establishment of a Fund for Future Litigation Expenses, attached hereto as Exhibit 1 ("Joint Decl.") at ¶ 4).

## I.   AWARD OF ATTORNEYS' FEES

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Federal Rules of Civil Procedure 54(d)(2) and 23(h).   To assess the reasonableness of a fee application in a class action case, the court first determines the appropriate method of calculating the attorneys' fees by applying either the percentage-of-the-fund approach or the lodestar multiplier method. *Van Horn v. Nationwide Prop. & Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007).   To confirm the reasonableness of the fee award, courts then analyze and weigh the six factors described in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).   *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

Interim fee awards are appropriate in large-scale litigation, such as this one, where the litigation will last several years, and in which settlements are reached periodically throughout the course of the ongoing litigation.   *See, e.g.*, *In re Air Cargo Shipping Serv. Litig.*, No. 06-md-1775, 2015 WL 5918273, at *6-7 (E.D.N.Y. Oct. 9, 2015) (awarding fourth round of interim attorneys' fees); *In re Diet Drugs Prod. Liab. Litig.*, No. 99-md-1203, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (awarding attorneys' fees after four years of litigation and noting "[t]o make them wait any longer for at least some award would be grossly unfair").

### A.   The Court Should Use the Percentage-of-the-Fund Approach

The diligent efforts of EPP Class Counsel, to date, have resulted in a common fund totaling nearly $225 million.   "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re*

*Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008).  When calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class."  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Courts in this District almost always utilize the percentage-of-the-fund approach in common fund cases.  *See, e.g.*, *In re Rawlings*, 9 F.3d at 515; *In Re Caraco Pharm. Labs., Ltd. Sec. Litig.*, No. 09-cv-12830, ECF No. 96 (E.D. Mich. June 26, 2013); *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011); *In Re General Motors Corp. Sec. and Derivative Litig.*, No. 06-md-1749, ECF No. 139 (E.D. Mich. Jan. 6, 2009); *Delphi*, 248 F.R.D. 483; Order No. 49, *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich. Nov. 26, 2002).  This approach eliminates the need for detailed consideration of the time devoted to the litigation, conserves judicial resources, and aligns the interests of class counsel and the class members.  *See, e.g.*, *Rawlings*, 9 F.3d at 515; *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-cv-14360, 2015 WL 1498888 at *15 (E.D. Mich. Mar. 31, 2015); *Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *69-70; *Delphi*, 248 F.R.D. at 502.  Indeed, this Court previously awarded fees to class counsel for the Direct Purchasers and Auto Dealers in this litigation using the percentage-of-the-fund approach.  *See* Order Granting Fees, *Occupant Safety Systems*, 2:12-cv-00601, ECF No. 128 (awarding attorneys' fees based on a percentage of the settlement fund); Order Regarding Auto Dealers' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards, *Wire Harness*, 2:12-cv-00102, ECF No. 401 (same).

By contrast, the lodestar multiplier method is "too time-consuming of scarce judicial resources," requiring courts to "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier."  *Rawlings*, 9 F.3d at 516-

17.   The lodestar multiplier approach emphasizes "the number of hours expended by counsel rather than the results obtained, [and] it . . . provides incentives for overbilling and the avoidance of early settlement."   *Id.* at 517.   The percentage-of-the-fund approach is preferable because it "more accurately reflects the results achieved."   *Id.* at 516.

**B.      The Fee Requested by Settlement Class Counsel is Appropriate.**

Courts in this District routinely approve attorneys' fees of 30% or more of the common fund created for the settlement class. *Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *80-81; *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-2343, 2014 U.S. Dist. LEXIS 91661, at *5-6 (E.D. Tenn. June 30, 2014); *In Re Caraco Pharm. Labs.*, No. 09-cv-12830, ECF No. 96 (E.D. Mich. June 26, 2013); *Bessey v. Packerland  Plainwell, Inc.*, No. 06-cv-95, 2007 U.S. Dist. LEXIS 79606, at *13 (W.D. Mich. Oct. 26, 2007); *Delphi*, 248 F.R.D. at 502-03; *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000).

An award of 30% of the Settlement Amount is consistent with awards made in antitrust class actions.  *See, e.g.*, *In re S.E. Milk Antitrust Litig.*, No. 08-md-1000, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) (awarding one-third of $158 million settlement fund); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. 10-cv-4038, 2011 U.S. Dist. LEXIS 130180 (N.D. Iowa Nov. 9, 2011) (awarding fee equal to 36 percent of the recovery); *In re Vitamins Antitrust Litig.*, No. 99-md-1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding fee of one-third of recovery); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45 percent of recovery).  *See also Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210-11 (S.D. Fla 2006) (awarding 31.5% of a $1.06 billion settlement fund and citing fourteen cases involving settlement funds between $40-696 million with fee awards between 25–35% of the fund).

This percentage should be applied to the Settlement Amount before deducting the litigation costs and expenses. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable.") (citations and internal quotation marks omitted); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming fee awards from a common benefit fund based on the gross settlement amount); *Staton v. Boeing Co.*, 327 F.3d 938, 974-75 (9th Cir. 2003) (same); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (same); *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427, at *71 (E.D. Mich. Dec. 13, 2011) ("The fee percentage is applied to the settlement fund before the separate award of litigation costs and expenses are deducted from the fund."); *Prandin*, 2015 WL 1396473, at *4 (granting fee award of one-third of the gross settlement fund); *In re Wellbutrin SR Antitrust Litig.*, No. 04-5525, 2011 U.S. Dist. LEXIS 158833, at *20 (E.D. Pa. Nov. 21, 2011) (granting class counsel's request for attorneys' fees of one-third of the $49 million gross settlement fund); *Delphi*, 248 F.R.D. at 505 (attorneys' fees awarded on gross settlement fund); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-35 (E.D. Mich. 2003) (attorneys' fees awarded based on the gross settlement). Settlement Class Counsel therefore, respectfully request a fee award of 30% of the total amount of the settlements.

### C.   Consideration of the *Ramey* Factors Supports the Requested Fee.

After selecting a method for awarding attorneys' fees, courts consider the six *Ramey* factors: (1) the value of the benefits to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the complexity of the litigation; (5) the professional skill and standing of counsel on both sides; and (6) the value of the services on an hourly basis.

*Ramey*, 508 F.2d at 1194-97.   These factors indicate that the fee requested here is fair and reasonable.

### 1. EPP Class Counsel have Secured Valuable Benefits for the Proposed Settlement Classes.

The principal consideration in awarding attorneys' fees is the result achieved for the class. *Delphi*, 248 F.R.D. at 503.  EPP Class Counsel have secured a Settlement Amount totaling nearly $225 million, which, after costs and expenses and fees, will be distributed to class members years earlier than it would be if litigation against the Settling Defendants continued through trial and appeal.[2]  Of course, this litigation was undertaken entirely on a contingency fee basis with no assurances of any recovery, much less a recovery in the amount of the settlements. Further, Settlement Class Counsel negotiated for and obtained significant non-monetary benefits from the Settling Defendants, most particularly, carefully crafted discovery cooperation clauses for the benefit of the classes

This recovery is especially important because, despite Defendants' myriad guilty pleas, the DOJ did not obtain any monetary restitution for the victims of Defendants' unlawful conduct. Yet, at the same time, the United States Attorney General made clear that "as a result of these conspiracies, Americans paid more for their cars."   *Remarks as Prepared for Delivery by Attorney General Eric Holder at Auto Parts Press Conference*, U.S. Department of Justice (Sept. 26, 2013), http://www.justice.gov/opa/speech/remarks-prepared-delivery-attorney-general-eric-holder-auto-parts-press-conference.  These settlements will provide much needed restitution to American consumers and other class members.

---

[2] The net settlement funds will be paid to eligible settlement class members that file claims. Significantly, no matter how many claims are filed, all of the net settlement proceeds will be distributed and none of the money will revert to Settling Defendants.

In addition to all cash settlements totaling almost $225 million, EPP Class Counsel have, as noted above, also secured equitable relief, including:  (i) substantial cooperation by Settling Defendants, who have or will provide fact proffers, witness interviews, documents, depositions, and trial testimony; and (ii) an agreement by certain Settling Defendants for a period of two years not to engage in certain specified conduct that would violate the antitrust laws involving the automotive parts that are at issue in these lawsuits.  *See, e.g.*, Long Form Notice attached as Exhibit A to the Proposed Order, *Wire Harness*, 2:12-cv-00103, ECF No. 415-1.   This cooperation provides access to critical documents and witnesses without the delay and expense of contested discovery.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("[T]here is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant"); *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.*, No. 81-md-310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981).  This cooperation has already assisted, and will continue to assist, EPPs in the prosecution of their claims against non-settling Defendants, providing substantial value to the classes.

### 2.   *Society has a Significant Stake in Awarding Reasonable Attorneys' Fees in this Litigation.*

Attorneys' fees should be awarded so as "to encourage attorneys to bring class actions to vindicate public policy (*e.g.*, the antitrust laws) as well as the specific rights of private individuals."  *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979), *aff'd in part and rev'd on other grounds*, 744 F.2d 1252, 1253 (7th Cir. 1984).  Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [obtain favorable outcomes for a class] in order to maintain an incentive to others," and counsel's success in complex antitrust

litigation "counsels in favor of a generous fee." *Cardizem*, 218 F.R.D. at 534 (internal quotation marks omitted); *Delphi*, 248 F.R.D. at 503.

EPP class members will only recover here through the work of lawyers pursuing this litigation entirely on a contingent fee basis. The substantial recoveries obtained to date serve the invaluable public policy of holding accountable those who violate U.S. antitrust laws, thereby promoting fair competition and honest pricing. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977) ("Section 16 undoubtedly embodies congressional policy favoring private enforcement of the antitrust laws, and undoubtedly there exists a strong national interest in antitrust enforcement."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("[I]t is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws."); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *53 (E.D. Pa. June 2, 2004) ("[T]he incentive for 'the private attorney general' is particularly important in the area of antitrust enforcement because public policy relies so heavily on such private action for enforcement of the antitrust laws.") (citation omitted).

### 3. *EPP Class Counsel are Working on a Contingent Fee Basis.*

The determination of a reasonable fee must include consideration of the contingent nature of any EPP Class Counsel's fee, the equally contingent outlay of millions of dollars of out-of-pocket costs and expenses, and the fact that the risks of failure in a class action are notoriously high. A number of courts "consider the risk of non-recovery as the most important factor in fee determination." *Kritzer v. Safelite Solutions, LLC*, No. 10-cv-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (quoting *Cardinal*, 528 F. Supp. 2d at 766).

The contingency fee factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *Cardinal*, 528 F. Supp. 2d at 766. Indeed,

"within the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011). Since 2012, EPP Class Counsel have undertaken significant financial risks prosecuting these antitrust class cases, an inherently complex and risky form of litigation,[3] of unprecedented size and scope against scores of Defendants represented by the largest defense law firms in this country. EPP Class Counsel have devoted millions of dollars of their financial resources to this litigation, with no guarantee of success, and will continue to devote significant time to continue to prosecute the Auto Parts cases against the remaining Defendants as well as administer the settlements reached. The requested fee award is reasonable in light of the substantial risks involved.

### 4.   The Complexity of the Litigation Supports the Requested Fee.

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *76 (quoting *Linerboard*, 292 F. Supp. 2d at 639); *see also Cardizem*, 218 F.R.D. at 533 ("Antitrust class actions are inherently complex").

This litigation is manifestly more complex than typical antitrust class actions. The DOJ has described its investigation of Defendants' bid-rigging and price-fixing conspiracies at issue here as the largest criminal cartel it has ever uncovered. The misconduct at issue in this litigation is unprecedented in breadth – involving at least 35 automotive component parts, many hundreds of affected vehicle models, and scores of foreign and domestic Defendants. Based on sheer volume alone – with 35 separately filed EPP cases within this MDL – this antitrust litigation is unparalleled.

---

[3] *See Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *76 (quoting *Linerboard*, 292 F. Supp. 2d at 639) (Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.").

EPPs have asserted a number of claims under both federal (for injunctive relief) and state antitrust, consumer protection, and unjust enrichment laws (for injunctive relief and damages). Because EPPs' claims for damages and restitution are based on the laws of approximately thirty states, they face additional substantial risks.[4]   As one court noted in a similar indirect purchaser action involving allegations of price-fixing of component parts by defendants, "[a]ssessment of damages involved a difficult analysis, which required taking into account the impact of and relationship between federal and state rules concerning damage analysis . . ." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 U.S. Dist. LEXIS 49885, at *70 (N.D. Cal. Apr. 1, 2013).  *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2013 U.S. Dist. LEXIS 137945, at *65 (N.D. Cal. June 20, 2013) (recommending class certification for indirect purchasers and noting that the indirect purchaser plaintiffs "still have the burden of demonstrating that there is a reasonable method for determining on a class-wide basis whether and to what extent that overcharge was passed on to each of the indirect purchasers at all levels of the distribution chain.") (Internal quotation marks omitted); *In re Cardizem,* 218 F.R.D. at 533 (granting indirect purchaser plaintiffs' motion for final approval and for attorneys' fees and noting that plaintiffs "also faced substantial additional difficulties as indirect purchasers.").

Issues attendant to serving and conducting discovery against numerous foreign defendants located around the world compounds the complexity of this case.  Further, nearly every Defendant brought a motion to dismiss EPPs' claims challenging standing and the sufficiency of EPPs various state law claims, among other issues.  EPPs overwhelmingly prevailed on those motions. *See* Joint Decl. ¶ 16.  EPP Class Counsel also had to manage multiple and overlapping processes of pleading, discovery, and settlement with multiple

---

[4] Some states permit indirect purchaser actions under state antitrust laws; others under state consumer protection laws.

Defendants.  It is respectfully submitted that the unique and complex nature of this litigation has required extraordinary time and effort, and the expenditure of significant funds by EPP Class Counsel which justifies the requested fee and expense award.

### 5.    *Skill and Experience of Counsel.*

Courts consider the skill and experience of counsel on both sides of the litigation in determining a reasonable fee award.  *In Re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196, 2015 U.S. Dist. LEXIS 23482, at *13 (N.D. Ohio Feb. 26, 2015); *Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *69.  The Court has found Settlement Class Counsel to have the requisite skill and experience in class action and antitrust litigation to effectively serve the interests of EPPs. EPP Class Counsel's vigorous prosecution of this litigation, including the highly favorable settlements achieved to date and the denial, in substantial part, of Defendants' motions to dismiss, demonstrates EPP Class Counsel's skill.  Likewise, Defendants are represented by highly skilled and experienced attorneys, who have brought to bear the resources of some of the largest law firms in the world.  This final factor also weighs in favor of awarding the requested fees and expenses.

### 6.    *A Lodestar Crosscheck Confirms That The Requested Fee Is Reasonable.*

Some courts apply a lodestar "cross-check" on the reasonableness of the requested fee calculated as a percentage of the fund.  *Cardinal*, 528 F. Supp. 2d at 764; *Packaged Ice*, 2011 U.S. Dist. LEXIS 150427, at *72.  Because a lodestar cross-check is optional, the Court need not engage in a detailed scrutiny of time records.  *Cardinal*, 528 F. Supp. 2d at 767.  The substantial time EPP Class Counsel have expended confirms that the fee requested is well "aligned with the amount of work the attorneys contributed" to the recovery, and does not, in any way, constitute a "windfall."  *Id.* at 764.

13

Under the lodestar method, the court determines the base amount of the fee by multiplying the number of hours reasonably expended by counsel's hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Under the direction of Settlement Class Counsel, EPP Class Counsel have done an enormous amount of work. Discovery has been extensive, and includes coordinating discovery for 56 of the named plaintiffs, and directing discovery from the Defendants. Joint Decl. at ¶ 4. Over the course of the cases, EPPs received substantial cooperation from multiple amnesty applicants and Settling Defendants, and are using that information to assist in the prosecution of the claims against the non-settling Defendants. *Id*. There has also been extensive motion practice related to the merits of the case as well as a multitude of discovery disputes. *Id*. at ¶ 4. All the while, EPP Class Counsel have been working on motions to certify the classes and bring these cases to trial. *Id*. ¶ 4.

EPP Class Counsel have vigorously prosecuted this litigation with a keen eye to efficiency and economy. *See* Joint Decl. at ¶¶ 4, 8, 9, 10. As shown in each of the firm's declarations submitted with this motion, counsel representing EPPs and their professional staff have worked 173,870.15 hours from Settlement Class Counsel's appointment as Interim Co-Lead Class Counsel on March 23, 2012 through December 31, 2015.[5] Joint Decl. at ¶ 21. Applying the rates charged by counsel to the hours expended yields a "lodestar" of $71,648,194.78. The requested fee is $67,400,505, which represents 30% of the Settlement Amount. *Id*.

---

[5] EPP Class Counsel performed work in the case at the direction of Settlement Class Counsel. As more fully explained in the Joint Decl., Settlement Class Counsel imposed rules and guidelines on the work assigned to and billing practices of EPP Class Counsel. Joint Decl. at ¶ 9. All time submitted by EPP Class Counsel in support of this motion was reviewed by Settlement Class Counsel for compliance with these rules and guidelines. *Id*.

This lodestar crosscheck strongly supports the requested fee and demonstrates that the requested fee is reasonable.  The requested fee represents a negative 0.9407 "multiplier" of the lodestar. *Id.*  Where the lodestar crosscheck reveals a negative lodestar, courts routinely grant attorneys' fees of at least 30% the settlement amount.  *See*, *e.g.*, *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Nov. 27, 2002) ("The requested attorneys' fees . . . representing 33-1/3% of the Settlement Fund is consistent with awards made in similar cases. This fee is also reasonable under the lodestar approach. . . . The fee requested is less than the cumulative lodestar"); *Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121185, at *26 (E.D. Pa. Oct. 19, 2011) ("A lodestar multiplier of less than one reveals that the fee request constitutes only a fraction of the work that the attorneys billed and is within the accepted range. . . . Therefore, the lodestar cross-check confirms the reasonableness of class counsel's fee request in this case").

In fact, unlike the present motion, it is not unusual for courts to grant a fee award that reflects a significant positive multiplier of plaintiffs' lodestar.  *See e.g.*, Order Granting Fees, *Occupant Safety Systems*, 2:12-cv-00601, ECF No. 128 (awarding attorneys' fees based on a percentage of the settlement fund, which unlike here, reflected a *positive* multiplier of approximately 2.09 of Direct Purchaser Plaintiffs' lodestar); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141, 2015 U.S. Dist. LEXIS 5964, at *14 (E.D. Mich. Jan. 20, 2015) (awarding attorneys' fees in the amount of one-third of a $19 million settlement fund, which equated to a multiplier of 3.01); *Bailey v. AK Steel Corp.*, No. 06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *8 (S.D. Ohio Feb. 28, 2008) (awarding attorneys' fees with a multiplier of approximately 3.01); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *24 (E.D. Pa. April 22, 2005) (awarding attorneys' fees in an antitrust action totaling 30% of $65

million settlement fund, which amounted to a multiplier of 3.15); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (awarding attorneys' fees in a commodities manipulation action totaling 27.5% of $116.6 million settlement fund, which amounted to a multiplier of 2.5).

While the hours worked are substantial, they are reasonable and reflect the challenging nature of this extraordinarily large and complex litigation. Given the excellent results achieved, the complexity of the claims and defenses, the risk of non-recovery, the formidable defense teams, the experience and skill of EPP Class Counsel, and the multiplier on the lodestar of less than 1, the requested fee is reasonable compensation for the work done by EPP Class Counsel.

## II.   SETTLEMENT CLASS COUNSEL SHOULD BE AUTHORIZED TO DISTRIBUTE FEES AMONG EPP CLASS COUNSEL

Settlement Class Counsel also request the Court's authorization to distribute the awarded attorneys' fees in a manner that, in the judgment of Settlement Class Counsel, fairly compensates each firm for its contribution to the prosecution of EPPs' claims. "Courts routinely permit counsel to divide common benefit fees among themselves." *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196, 2016 U.S. Dist. LEXIS 9609, at *51 (N.D. Ohio Jan. 27, 2016); *see, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (affirming the district court's decision to permit co-chairs of the Executive Committee to divide attorney fees according to their discretion, and declining to "deviate from the accepted practice of allowing counsel to apportion fees amongst themselves"); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 383 (S.D. Ohio 2006) ("Class Counsel shall allocate the award of attorneys' fees among counsel for the Class based on their good-faith assessment of the contribution of such counsel to the prosecution of this Action."); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1033 (S.D. Ohio 2001) (approving distribution of a "single fee from which the [plaintiffs' Steering Committee] will allocate the attorneys' fees among the attorneys who provided a benefit

to the Class"); *see also Bowling v. Pfizer, Inc*., 102 F.3d 777 (6th Cir. 1996) (suggesting the Sixth Circuit would adopt this approach to fee distribution, observing that the critical inquiry is whether the fee fairly reflects the work done by all plaintiffs' counsel.).  Accordingly, Settlement Class Counsel respectfully request that the Court authorize them to allocate the fees that are awarded among EPP Class Counsel.

### III.     THE PROPOSED FEE STRUCTURE MAXIMIZES EFFICIENCIES AND PREVENTS DOUBLE COUNTING

The time and expense devoted to prosecuting claims against Defendants related to one automotive part are intimately related to and overlap with the prosecution of EPPs' claims related to other automotive parts and against other Defendants.  As the Judicial Panel on Multidistrict Litigation specifically contemplated here, the centralization of numerous auto parts cases has drastically reduced duplicative discovery and conserved the resources of the parties, their counsel, and the judiciary.  *In re Automotive Wire Harness Systems Antitrust Litig.*, 867 F. Supp. 2d 1349 (J.P.M.L. 2012).

EPP Class Counsel have worked to take advantage of the overlapping and interrelated nature of the cases in this litigation to maximize efficiencies.  Two types of efficiencies have very much benefited the classes overall.  The first is a collective efficiency, where the time and expense devoted by EPP Class Counsel have benefited multiple cases.  The second is an ongoing efficiency, where work or expenses incurred in an early filed case benefits subsequent cases. These efficiencies have allowed EPP Class Counsel to maximize their efforts where time dedicated to one case can and does benefit the classes in other cases.

Significant collective efficiencies occurred throughout the litigation.  For example, EPP Class Counsel secured a collective efficiency in this litigation by arguing for and obtaining an Order ensuring that each EPP Class Representative would only be deposed once by Defendants

across all cases.  Joint Decl. ¶ 11.  This resulted in a substantial savings of time and attorneys' fees across all of the cases.  *Id.*  Any attempt to parcel out how much time devoted to each deposition benefited each of EPPs' claims against each Defendant in each Auto Parts case would be arbitrary.

A second example of a collective efficiency can be found in briefing motions to dismiss. In several rounds of briefing, EPPs proposed and entered into stipulations with Defendants to brief certain collective issues across multiple cases rather than on a case-by-case basis.  Joint Decl. ¶ 12.  Like EPP depositions, this resulted in a substantial cost and time savings and reflects the overlapping nature of the issues to be litigated in all of the cases.

Another example of a collective efficiency is EPPs drafting, serving, and negotiating subpoenas directed to original equipment manufacturers, including discovery-related motion practice.  *Id.* at ¶ 13.  These subpoenas covered all of the parts in the Auto Parts Action and will ensure that the parties are not required to engage in the burdensome process of seeking this discovery 35 or more separate times, depending upon the ultimate number of cases in the Auto Parts Action.  *Id.*

In addition, EPP Class Counsel helped to bring about substantial ongoing efficiencies, an example of which can be found in EPP Class Counsel's document review work.  For instance, during the initial stages of the review of documents in the Wire Harness Systems case – the first-filed case and first to proceed to discovery – each reviewing attorney was learning about the auto parts industry as a whole, its methods of conducting business and its vocabulary.  *Id.* at ¶ 14. This understanding naturally increased throughout the review process and enabled reviewing attorneys to review, process, and analyze documents in subsequent cases more effectively and efficiently.  *Id.*  Reviewers also became increasingly familiar with Defendants' internal and

industry acronyms, organizational structure, business practices, and conspiratorial behavior. The review process permitted EPPs to create a cast of characters of defendants' employees, many of whom had responsibility for multiple parts during the alleged class period. But this efficiency is not just limited to the Wire Harness Systems case; subsequent cases all clearly benefited from the work done in Wire Harness Systems. Indeed, since these cases are inextricably intertwined, the review and analysis of documents and proffers in one case has provided EPP Class Counsel with knowledge and information applicable to the other cases. *Id.* at ¶ 14. This iterative learning process paid substantial rewards to the class by permitting EPPs to settle multiple cases at a time (e.g., the Hitachi settlement resolves claims in nine cases and the Panasonic settlement resolves claims in three cases).

Yet another example of ongoing efficiencies is reflected in EPPs' briefing of their oppositions to Defendants' multiple motions to dismiss, which have presently been filed in 21 cases. Joint Decl. ¶ 16. As the Court is aware, Defendants in subsequent cases filed motions to dismiss advancing many of the very same arguments rejected by the Court in prior cases. The time EPP Class Counsel spent researching and drafting successful responses to Defendants' motions to dismiss in the earlier cases therefore greatly benefited the EPP classes in subsequent cases, where in many instances, the Court adopted its prior rulings. *Id.* Similarly, stipulations and other protocols negotiated in the earlier-filed cases served as templates for similar stipulations and protocols in the remaining cases. Joint Decl. ¶ 17.

Understanding the global benefits to class members from the inherent efficiencies in multi-district litigation, courts grant attorneys' fees from partial settlements based on all work done to-date. *See, e.g.*, *Air Cargo,* 2015 WL 5918273 (granting motion for attorneys' fees from settlements with multiple defendants based upon all work on the case from the last fee award to-

date); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 U.S. Dist. LEXIS 160764, at *18 (E.D. Pa. Nov. 9, 2012) (granting motion for attorneys' fees from settlement with single defendant based upon all work on case to-date); *In re Automotive Refinishing Paint Antitrust Litig.*, No. 08-md-1426, 2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) (granting interim award of attorneys' fees in connection with initial settlements based on analysis of all work done on case to-date, and later granting subsequent fee motion based on settlements with remaining defendants and work done after previous fee award). Thus, the time devoted to one or more cases directly benefited the EPP classes in other cases.

EPPs request that the Court award fees totaling 30% of the Settlement Amount, or, in other words, 30% of each individual settlement fund. EPPs seek a *pro rata* award of fees from the settlement funds similar to that approved by the Court in the Automotive Dealers cases. *See* Order, at 5, *Wire Harness*, 2:12-cv-00102, ECF No. 401. The chart at Appendix B reflects the proposed allocation of the requested fees among the applicable cases.

## IV. AWARD OF EXPENSES AND COSTS

For four years, EPP Class Counsel have funded and advanced the substantial expenses and costs required to prosecute the litigation, and did so without any guarantee of reimbursement. Having achieved the substantial settlements currently before the Court, counsel should be reimbursed for litigation expenses and costs which include: (1) costs and expenses incurred from the Litigation Fund between March 23, 2012 – the date the Court appointed Interim Co-Lead Counsel in the Wire Harness Systems case – and February 29, 2016; and (2) individual costs and expenses incurred by each EPP Class Counsel from March 23, 2012 through December 31, 2015.[6] Settlement Class Counsel also request that the Court authorize them to set

---

[6] Settlement Class Counsel are seeking reimbursement for the expenses and costs incurred by the

aside roughly five percent of the total settlement proceeds, which amount is to be used for future litigation expenses in prosecuting the claims remaining against the non-settling Defendants.

### A.    A Pro Rata Allocation of Expenses Maximizes Efficiencies and Prevents Duplicate Billing

This sprawling, multi-case litigation is far more complex than virtually any other antitrust litigation.  As with the time devoted by EPP Class Counsel, there also have been significant efficiencies with regard to the costs and expenses incurred.  Prosecuting claims related to one auto part or against one Defendant has greatly benefited EPPs' prosecution of claims related to other auto parts and against other Defendants.  As such, EPP Class Counsel have systematically taken advantage of and capitalized on the efficiencies in this litigation to minimize expenses as much as possible.  Therefore, the most equitable allocation of the expenses incurred in this litigation is a *pro rata* allocation of expenses incurred to date among each of the settlement funds.

Because of these efficiencies, a case-by-case expense allocation is not only impracticable, but essentially arbitrary because the expenditures may have benefited multiple cases and claims. For example, Defendants' taking of each named plaintiff's deposition drastically reduced travel, court reporter, copy, and other deposition expenses – a great benefit to the classes.  Joint Decl. at ¶ 11.  However, because each deposition applies to each case, it would not be feasible to try to allocate which portion of each deposition expense benefited which case.  *Id.*  Further, expenses incurred early in the litigation have clearly benefited the later-filed cases.  For example, initial service on foreign Defendants was much more expensive because each foreign Defendant originally had to be served pursuant to the Hague Convention.  *Id.* at ¶ 15.  In subsequently-filed

---

Litigation Fund between March 23, 2012 and February 29, 2016.  This amount encompasses the litigation fund contributions made by EPP Class Counsel from March 23, 2012 through December 31, 2015 as set forth in their separate declarations.

auto parts cases, foreign Defendants (who had previously been served via the Hague) were then served through their U.S counsel, saving End-Payors tens of thousands of dollars in these subsequently-filed actions.  *Id.*  The classes in later filed cases have obviously benefited from reduced service costs in the later filed cases.

Similarly, expenses incurred in connection with document review and experts have benefited all of the cases.  In addition to the common expenses attendant with document review in each case, EPP Class Counsel incurred a substantial initial set-up fee by the document hosting service provider.  *Id.* at ¶ 18.  Because Wire Harness Systems was the first case for which EPPs received a DOJ production, it was charged this start up expense.  Yet, each subsequent case clearly benefited from use of the same document review platform, and EPP Class Counsel's review and analysis of these documents has greatly contributed to the settlements before the Court.  *Id.*  Allocating the entire start-up fee to the Wire Harness Systems settlements would provide other settlement classes with an unfair windfall.  The same is true for expert costs.  EPP Class Counsel have incurred costs in connection with work performed by their experts in certain cases, but the experts' work benefits all of EPPs' claims across the entire litigation.  For instance, work done on issues such as pass-on and the relationship between EPPs and Automotive Dealers may well be similar, if not identical, across multiple cases.  *Id.*  The experts' work also involved ongoing efficiencies, as the experts have utilized the knowledge and work done in all of the cases in a collective basis.

### B.      Reimbursement of Costs Already Incurred

The Court should award reimbursement of (1) costs and expenses incurred from the Litigation Fund between March 23, 2012 – the date the Court appointed Interim Co-Lead Counsel in the Wire Harness Systems case – and February 29, 2016; and (2) individual costs and expenses incurred by each EPP Class Counsel from March 23, 2012 through December 31, 2015.

*See, e.g.*, Fed. R. Civ. P. 23(h) (allowing the court to award reasonable attorneys' fees and expenses); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (Citation and internal quotation marks omitted.)); *Cardizem*, 218 F.R.D. at 535.

EPP Class Counsel have incurred $7,622,359.77 in litigation costs and expenses, as set forth more fully above, for the benefit of the settlement class members in the settlements before the Court.  These costs include, among other items, expert fees, document review and hosting for the millions of pages of documents produced by defendants, scanning and preparing EPP documents, deposition expenses, travel around the world for court appearances, depositions, and witness interviews, legal research, and other reasonable litigation costs and expenses.  *See generally* Declaration of Steven N. Williams Regarding End-Payor Plaintiffs' Litigation Fund in Support of End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Establishment of a Fund for Future Litigation Expenses ("Williams Decl."), attached as Exhibit B to the Joint Decl.  EPP Class Counsel incurred these expenses without any guarantee of recovery and should be reimbursed from the total amount of settlement funds.  Joint Decl. at ¶ 24.

Accordingly, Settlement Class Counsel ask the Court to allocate the $7,622,359.77 of costs and expenses incurred on a *pro rata* basis between the settlement funds, as set forth in the chart at Appendix C.

### C.        Award of Future Litigation Expense Fund

Settlement Class Counsel also request that they be permitted to use a portion of the total settlements achieved to date to create a fund to pay future expenses incurred in the ongoing litigation against the non-settling Defendants.  *See generally* Williams Decl.  Allowing a portion of the total settlement funds to be used for future expenses is well accepted.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255, at *63-64 (E.D. Mich. Feb. 22, 2011) (approving class counsel's request to use proceeds from early settlement to pay litigation expenses); *Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643 (concluding that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *Newby v. Enron Corp.*, 394 F.3d 296, 302-03 (5th Cir. 2004) (affirming establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) (approving request for $500,000 set aside to pay outstanding and future litigation costs).  This Court granted a similar request by the Auto Dealer Plaintiffs.  Order, *Wire Harness*, 2:12-cv-00102, ECF No. 401.

Settlement Class Counsel request that approximately five percent ($11,250,000) be set aside from the total settlements and used to fund future litigation expenses, including but not limited to:  (1) substantial economic and industry expert fees in connection with upcoming class certification motions; (2) document review hosting; (3) translation of documents; and (4) travel expenses and deposition reporting costs in connection with depositions in the U.S. and abroad. This request is in line with the percent of settlement funds dedicated to future expenses in other antitrust cases.  *See*, *e.g.*, Order, *Wire Harness*, 2:12-cv-00102, ECF No. 401 (approving 5% of nearly $59 million settlement fund for future litigation fund);  *Packaged Ice.*, 2011 U.S. Dist. LEXIS 17255, at *63 (approving 5.6% of $13.5 million settlement for future litigation fund); *In*

*re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving 7.9% of approximately $19 million settlement for future litigation fund; *but see Newby*, 394 F.3d at 300 (affirming approval of 37.5% of $40 million settlement for future litigation fund).

The funds for future litigation expenses would be allocated on a *pro rata* basis from each settlement fund based on the fund's proportion of the overall total settlements, as set forth in the chart at Appendix D.

## CONCLUSION

For the reasons set forth above, Settlement Class Counsel respectfully request that the Court grant their motion and award attorneys' fees, reimburse litigation expenses, and establish a fund to be used for future litigation costs expended for the benefit of the Classes.

Date: March 10, 2016

Respectfully submitted,

/s/ Hollis Salzman_____
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

/s/ Steven N. Williams_____
Steven Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

/s/ Marc M. Seltzer_____
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
clangham@susmangodfrey.com

*Settlement Class Counsel and Interim Co-Lead Counsel for the Proposed End-Payor Plaintiffs Classes*

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*

# APPENDIX A

| End-Payor Plaintiffs' Settlement Funds | | |
|---|---|---|
| **Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| Autoliv | Occupant Safety Systems | $ 19,000,000 |
| Fujikura | Automotive Wire Harness Systems | $ 7,144,000 |
| Hitachi Automotive Systems, Ltd. | Air Flow Meters | $ 5,047,920 |
| | Alternators | $ 6,216,420 |
| | Electronic Throttle Bodies | $ 6,870,780 |
| | Fuel Injection Systems | $ 8,693,640 |
| | Ignition Coils | $ 7,431,660 |
| | Inverters | $ 2,337,000 |
| | Motor Generators | $ 2,337,000 |
| | Starters | $ 3,832,680 |
| | Valve Timing Control Devices | $ 3,972,900 |
| KL Sales | Automotive Wire Harness Systems | $ 228,000 |
| Lear | Automotive Wire Harness Systems | $ 3,040,000 |
| Nippon Seiki | Instrument Panel Clusters | $ 4,560,000 |
| Panasonic | HID Ballasts | $ 5,510,596 |
| | Steering Angle Sensors | $ 6,293,229 |
| | Switches | $ 5,296,175 |
| Sumitomo | Automotive Wire Harness Systems | $ 35,817,220 |
| | Heater Control Panels | $ 2,182,780 |
| T.RAD | ATF Warmers | $ 741,000 |
| | Radiators | $ 6,669,000 |
| TRW | Occupant Safety Systems | $ 5,446,350 |
| Yazaki | Automotive Wire Harness Systems | $ 73,267,000 |
| | Fuel Senders | $ 58,000 |
| | Instrument Panel Clusters | $ 2,675,000 |
| | **TOTAL** | **$ 224,668,350** |

A-2

# APPENDIX B

| End-Payor Plaintiffs' Attorneys' Fees | | | |
|---|---|---|---|
| **Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** | **Attorneys' Fees** |
| Autoliv | Occupant Safety Systems | $ 19,000,000 | $ 5,700,000 |
| Fujikura | Automotive Wire Harness Systems | $ 7,144,000 | $ 2,143,200 |
| Hitachi Automotive Systems, Ltd. | Air Flow Meters | $ 5,047,920 | $ 1,514,376 |
| | Alternators | $ 6,216,420 | $ 1,864,926 |
| | Electronic Throttle Bodies | $ 6,870,780 | $ 2,061,234 |
| | Fuel Injection Systems | $ 8,693,640 | $ 2,608,092 |
| | Ignition Coils | $ 7,431,660 | $ 2,229,498 |
| | Inverters | $ 2,337,000 | $ 701,100 |
| | Motor Generators | $ 2,337,000 | $ 701,100 |
| | Starters | $ 3,832,680 | $ 1,149,804 |
| | Valve Timing Control Devices | $ 3,972,900 | $ 1,191,870 |
| KL Sales | Automotive Wire Harness Systems | $ 228,000 | $ 68,400 |
| Lear | Automotive Wire Harness Systems | $ 3,040,000 | $ 912,000 |
| Nippon Seiki | Instrument Panel Clusters | $ 4,560,000 | $ 1,368,000 |
| Panasonic | HID Ballasts | $ 5,510,596 | $ 1,653,179 |
| | Steering Angle Sensors | $ 6,293,229 | $ 1,887,969 |
| | Switches | $ 5,296,175 | $ 1,588,853 |
| Sumitomo | Automotive Wire Harness Systems | $ 35,817,220 | $ 10,745,166 |
| | Heater Control Panels | $ 2,182,780 | $ 654,834 |
| T.RAD | ATF Warmers | $ 741,000 | $ 222,300 |
| | Radiators | $ 6,669,000 | $ 2,000,700 |
| TRW | Occupant Safety Systems | $ 5,446,350 | $ 1,633,905 |
| Yazaki | Automotive Wire Harness Systems | $ 73,267,000 | $ 21,980,100 |
| | Fuel Senders | $ 58,000 | $ 17,400 |
| | Instrument Panel Clusters | $ 2,675,000 | $ 802,500 |
| | **TOTAL** | $ **224,668,350** | $ **67,400,505** |

A-4

# APPENDIX C

| End-Payor Plaintiffs' Costs and Expenses | | | | |
|---|---|---|---|---|
| **Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** | **Percent of Total Settlements** | **Expense Contribution** |
| Autoliv | Occupant Safety Systems | $ 19,000,000 | 8.46% | $ 644,616 |
| Fujikura | Automotive Wire Harness Systems | $ 7,144,000 | 3.18% | $ 242,376 |
| Hitachi Automotive Systems, Ltd. | Air Flow Meters | $ 5,047,920 | 2.25% | $ 171,262 |
| | Alternators | $ 6,216,420 | 2.77% | $ 210,905 |
| | Electronic Throttle Bodies | $ 6,870,780 | 3.06% | $ 233,106 |
| | Fuel Injection Systems | $ 8,693,640 | 3.87% | $ 294,951 |
| | Ignition Coils | $ 7,431,660 | 3.31% | $ 252,135 |
| | Inverters | $ 2,337,000 | 1.04% | $ 79,288 |
| | Motor Generators | $ 2,337,000 | 1.04% | $ 79,288 |
| | Starters | $ 3,832,680 | 1.71% | $ 130,032 |
| | Valve Timing Control Devices | $ 3,972,900 | 1.77% | $ 134,789 |
| KL Sales | Automotive Wire Harness Systems | $ 228,000 | 0.10% | $ 7,735 |
| Lear | Automotive Wire Harness Systems | $ 3,040,000 | 1.35% | $ 103,139 |
| Nippon Seiki | Instrument Panel Clusters | $ 4,560,000 | 2.03% | $ 154,708 |
| Panasonic | HID Ballasts | $ 5,510,596 | 2.45% | $ 186,959 |
| | Steering Angle Sensors | $ 6,293,229 | 2.80% | $ 213,511 |
| | Switches | $ 5,296,175 | 2.36% | $ 179,684 |
| Sumitomo | Automotive Wire Harness Systems | $ 35,817,220 | 15.94% | $ 1,215,177 |
| | Heater Control Panels | $ 2,182,780 | 0.97% | $ 74,056 |
| T.RAD | ATF Warmers | $ 741,000 | 0.33% | $ 25,140 |
| | Radiators | $ 6,669,000 | 2.97% | $ 226,260 |
| TRW | Occupant Safety Systems | $ 5,446,350 | 2.42% | $ 184,779 |
| Yazaki | Automotive Wire Harness Systems | $ 73,267,000 | 32.61% | $ 2,485,741 |
| | Fuel Senders | $ 58,000 | 0.03% | $ 1,968 |
| | Instrument Panel Clusters | $ 2,675,000 | 1.19% | $ 90,755 |
| | **TOTAL** | **$ 224,668,350** | **100%** | **$ 7,622,359.77** |

# APPENDIX D

| End-Payor Plaintiffs' Future Litigation Fund | | | | |
|---|---|---|---|---|
| Settling Defendant | Automotive Parts Case | Settlement Fund | Percent of Total Settlements | Future Lit Fund Contribution |
| Autoliv | Occupant Safety Systems | $ 19,000,000 | 8.46% | $ 951,402 |
| Fujikura | Automotive Wire Harness Systems | $ 7,144,000 | 3.18% | $ 357,727 |
| Hitachi Automotive Systems, Ltd. | Air Flow Meters | $ 5,047,920 | 2.25% | $ 252,769 |
| | Alternators | $ 6,216,420 | 2.77% | $ 311,280 |
| | Electronic Throttle Bodies | $ 6,870,780 | 3.06% | $ 344,046 |
| | Fuel Injection Systems | $ 8,693,640 | 3.87% | $ 435,324 |
| | Ignition Coils | $ 7,431,660 | 3.31% | $ 372,132 |
| | Inverters | $ 2,337,000 | 1.04% | $ 117,022 |
| | Motor Generators | $ 2,337,000 | 1.04% | $ 117,022 |
| | Starters | $ 3,832,680 | 1.71% | $ 191,917 |
| | Valve Timing Control Devices | $ 3,972,900 | 1.77% | $ 198,938 |
| KL Sales | Automotive Wire Harness Systems | $ 228,000 | 0.10% | $ 11,417 |
| Lear | Automotive Wire Harness Systems | $ 3,040,000 | 1.35% | $ 152,224 |
| Nippon Seiki | Instrument Panel Clusters | $ 4,560,000 | 2.03% | $ 228,337 |
| Panasonic | HID Ballasts | $ 5,510,596 | 2.45% | $ 275,937 |
| | Steering Angle Sensors | $ 6,293,229 | 2.80% | $ 315,126 |
| | Switches | $ 5,296,175 | 2.36% | $ 265,200 |
| Sumitomo | Automotive Wire Harness Systems | $ 35,817,220 | 15.94% | $ 1,793,505 |
| | Heater Control Panels | $ 2,182,780 | 0.97% | $ 109,300 |
| T.RAD | ATF Warmers | $ 741,000 | 0.33% | $ 37,105 |
| | Radiators | $ 6,669,000 | 2.97% | $ 333,942 |
| TRW | Occupant Safety Systems | $ 5,446,350 | 2.42% | $ 272,719 |
| Yazaki | Automotive Wire Harness Systems | $ 73,267,000 | 32.61% | $ 3,668,758 |
| | Fuel Senders | $ 58,000 | 0.03% | $ 2,904 |
| | Instrument Panel Clusters | $ 2,675,000 | 1.19% | $ 133,947 |
| | TOTAL | $ 224,668,350 | 100% | $ 11,250,000 |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 10, 2016, I electronically filed the foregoing documents with the Clerk of the Court using the ECF system, which will send electronic notification of such filings upon all registered counsel of record.

THE MILLER LAW FIRM, P.C.

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
THE MILLER LAW FIRM, P.C.
950 W. University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for End-Payor Plaintiffs*