**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 2:12-md-02311<br>: Judge Marianne O. Battani<br>: Magistrate Judge Mona K. Majzoub |
| IN RE WIRE HARNESS SYSTEMS<br>IN RE ALTERNATORS<br>IN RE STARTERS<br>IN RE IGNITION COILS<br>IN RE HID BALLASTS<br>IN RE ELECTRONIC POWERED STEERING ASSEMBLIES<br>IN RE FUEL INJECTION SYSTEMS<br>IN RE VALVE TIMING CONTROL DEVICES | : Case No. 2:12-cv-00103<br>: Case No. 2:13-cv-00703<br>: Case No. 2:13-cv-01103<br>: Case No. 2:13-cv-01403<br>: Case No. 2:13-cv-01703<br>: Case No. 2:13-cv-01903<br>:<br>: Case No. 2:13-cv-02203<br>: Case No. 2:13-cv-02503 |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS | : |

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH**
**MITSUBISHI ELECTRIC DEFENDANTS AND**
**PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that as soon as this motion may be heard before Hon. Marianne

O. Battani, End Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an

order preliminarily approving a proposed settlement between the End Payor Plaintiffs and

Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric

Automotive America, Inc. (the "Mitsubishi Electric Defendants") in the amount of $64,229,268,

and provisional certification of the proposed Settlement Classes in the above-entitled actions.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all filings in this litigation, and such other argument as may be presented to the Court.

Date: April 15, 2016                    Respectfully submitted,

                                        */s/ Steven N. Williams*
                                        Steven N. Williams
                                        Demetrius Lambrinos
                                        Elizabeth Tran
                                        **COTCHETT, PITRE & McCARTHY, LLP**
                                        San Francisco Airport Office Center
                                        840 Malcolm Road, Suite 200
                                        Burlingame, CA 94010
                                        Telephone: (650) 697-6000
                                        Facsimile: (650) 697-0577
                                        swilliams@cpmlegal.com
                                        dlambrinos@cpmlegal.com
                                        etran@cpmlegal.com

                                        Hollis Salzman
                                        Bernard Persky
                                        William V. Reiss
                                        **ROBINS KAPLAN LLP**
                                        601 Lexington Avenue, Suite 3400
                                        New York, NY 10022
                                        Telephone: (212) 980-7400
                                        Facsimile: (212) 980-7499
                                        HSalzman@RobinsKaplan.com
                                        BPersky@RobinsKaplan.com
                                        WReiss@RobinsKaplan.com

                                        Marc M. Seltzer
                                        Steven G. Sklaver
                                        **SUSMAN GODFREY L.L.P.**
                                        1901 Avenue of the Stars, Suite 950
                                        Los Angeles, CA 90067-6029
                                        Telephone: (310) 789-3100
                                        Facsimile: (310) 789-3150
                                        mseltzer@susmangodfrey.com
                                        ssklaver@susmangodfrey.com
                                        Terrell W. Oxford

Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed
End-Payor Plaintiff Classes*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311 |
| | Judge Marianne O. Battani |
| | Magistrate Judge Mona K. Majzoub |
| IN RE WIRE HARNESS SYSTEMS | Case No. 2:12-cv-00103 |
| IN RE ALTERNATORS | Case No. 2:13-cv-00703 |
| IN RE STARTERS | Case No. 2:13-cv-01103 |
| IN RE IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE HID BALLASTS | Case No. 2:13-cv-01703 |
| IN RE ELECTRONIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503 |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH
MITSUBISHI ELECTRIC DEFENDANTS AND
PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES**

## STATEMENT OF ISSUES PRESENTED

1. Whether End-Payor Plaintiffs' ("EPPs") settlement with Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (together, "Mitsubishi Electric" or the "Mitsubishi Electric Defendants"), embodied in the Settlement Agreement entered into on March 30, 2016 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved;

2. Whether the Court should provisionally certify the Settlement Classes under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3);

3. Whether the Court should stay the proceedings by the EPPs against the Mitsubishi Electric Defendants in accordance with the terms of the Settlement Agreement;

4. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement. [1]

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

i

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 8

ARGUMENT ................................................................................................ 14

I.   Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval ...................................................... 14

    A.   The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ............................................................... 17

    B.   The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel With the Assistance of a Mediator. 21

II.  The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23. .................................................................................. 23

    A.   The Proposed Settlement Classes Meet the Requirements of Rule 23(a). ............ 24

        i.   The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court ............................................. 25

        ii.  End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions. ................................ 26

        iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes ...................... 27

        iv.  Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes ................................................................ 28

    B.   The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3). ........ 30

        i.   Common Questions of Law and Fact Predominate. .................................... 30

        ii.  A Class Action is the Superior Method to Adjudicate These Claims ........... 33

    **C.**   The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(2). ........ 34

III. Notice to the Class Members. ........................................................... 34

CONCLUSION ................................................................................... 35

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.,*
   982 F.2d 242 (7th Cir. 1992)................................................................ 15

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)........................................................... 30, 31, 34

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,*
   133 S.Ct. 1184 (2013)........................................................... 24, 31

*Bacon v. Honda of America Mfg., Inc.,*
   370 F.3d 565 (6th Cir. 2004)............................................................ 25

*Blades v. Monsanto Co.,*
   400 F.3d 562 (8th Cir. 2005)............................................................ 32

*Bobbitt v. Acad. of Reporting,*
   2009 WL 2168833 (E.D. Mich. Jul. 21, 2009)............................... 15

*Bowers v. Windstream Ky. East, LLC,*
   2013 U.S. Dist. LEXIS 157242 (W.D. Ky. Nov. 1, 2013)............. 23

*Cason-Merenda v. VHS of Mich., Inc.,*
   2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013) .......... passim

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.,*
   803 F.2d 878 (6th Cir. 1986)............................................................ 16

*Comcast Corp. v. Behrend,*
   133 S.Ct. 1426 (2013) .................................................................... 31

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007).............................................................. 32

*Date v. Sony Elecs., Inc.,*
   2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013)........... 26

*Dillworth v. Case Farms Processing, Inc.,*
   2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010)............... 33

*Fidel v. Farley,*
   534 F.3d 508 (6th Cir. 2008)............................................................ 35

*Gautreaux v. Pierce,*
690 F.2d 616 (7th Cir. 1982) ............................................................................... 17

*Golden v. City of Columbus,*
404 F.3d 950 (6th Cir. 2005) ............................................................................... 25

*Griffin v. Flagstar Bancorp, Inc.,*
2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013) ................................ 14, 22, 26, 28

*Hyland v. Homeservices of Am., Inc.,*
2008 U.S. Dist. LEXIS 90892 (W.D. Ky. Nov. 6, 2008) ..................................... 24

*In re Aluminum Phosphide Antitrust Litig.,*
160 F.R.D. 609 (D. Kan. 1995) ........................................................................... 26

*In re Am. Med. Sys., Inc.,*
75 F.3d 1069 (6th Cir. 1996) ............................................................................... 25, 28

*In re Ampicillin Antitrust Litig.,*
82 F.R.D. 652 (D.D.C. 1979) ............................................................................... 21

*In re Blood Reagents Antitrust Litig.,*
283 F.R.D. 222 (E.D. Pa. 2012) .......................................................................... 32

*In re Cardizem CD Antitrust Litig.,*
218 F.R.D. 508 (E.D. Mich. 2003) ................................................................. passim

*In re Chambers Dev. Sec. Litig.,*
912 F. Supp. 822 (W.D. Pa. 1995) ...................................................................... 18

*In re Corrugated Container Antitrust Litig.,*
1981 WL 2093 (S.D. Tex. Jan. 27, 1981) ........................................................... 19, 20, 21

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195, 208 (5th Cir. 1981) ....................................................................... 29

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.,*
248 F.R.D. 483 (E.D. Mich. 2008) ...................................................................... 23

*In re Dun & Bradstreet Credit Servs. Customer Litig.,*
130 F.R.D. 366 (S.D. Ohio 1990) ........................................................................ 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ..................................... 26

v

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.,*
    481 F.3d 1119 (9th Cir. 2007) ................................................................................ 18

*In re Foundry Resins Antitrust Litig.,*
    242 F.R.D. 393 (S.D. Ohio 2007) .................................................................... passim

*In re Linerboard Antitrust Litig.,*
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................... 19, 21

*In re Linerboard Antitrust Litig.,*
    321 F. Supp. 2d 619 (E.D. Pa. 2004) ....................................................................... 20

*In re Packaged Ice Antitrust Litig.,*
    2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011) ............................. passim

*In re Packaged Ice Antitrust Litig.,*
    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ........................................................ 16

*In re Potash Antitrust Litig.,*
    159 F.R.D. 682 (D. Minn. 1995) ............................................................................. 30

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ..................................................................... 20

*In re Rent-Way Sec. Litig.,*
    305 F.Supp.2d 491 (W.D. Pa. 2003) ....................................................................... 19

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) ............................................................................ 30, 32

*In re Southeastern Milk Antitrust Litig.,*
    2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7, 2010) ...................................... 24

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,*
    2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19, 2001) ...................................... 16

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
    219 F.R.D. 661 (D. Kan. 2004) ............................................................................... 33

*In re Uranium Antitrust Litig.,*
    617 F.2d 1248 (7th Cir. 1980) ................................................................................. 21

*In re Urethane Antitrust Litig.,*
    251 F.R.D. 629 (D. Kan. 2008) ............................................................................... 32

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001)................................................................. 32

*In re Vitamins Antitrust Litig.,*
    209 F.R.D. 251 (D.D.C. 2002) .............................................................. 31

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004).................................................................. 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    722 F.3d 838 (6th Cir. 2013)................................................. 24, 26, 30, 32

*Int'l Union, UAW v. Ford Motor Co.,*
    2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13, 2006)................ 15, 27

*IUE-CWA v. Gen. Motors Corp.,*
    238 F.R.D. 583 (E.D. Mich. 2006)..................................................... 15, 21

*Karkoukli's, Inc. v. Dohany,*
    409 F.3d 279 (6th Cir. 2005)................................................................. 35

*Leonhardt v. ArvinMeritor, Inc.,*
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ................................................. 22

*Levva v. Medline Indus, Inc.,*
    716 F.3d 510 (9th Cir. 2013)................................................................. 31

*Marcus v. Dep't of Revenue,*
    206 F.R.D. 509 (D. Kan. 2002) ............................................................. 29

*Miller v. Univ. of Cincinnati,*
    241 F.R.D. 285 (S.D. Ohio 2006) .......................................................... 25

*Powers v. Hamilton Cnty. Public Defender Comm.,*
    501 F.3d 595 (6th Cir. 2007)................................................................. 31

*Rankin v. Rots,*
    2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006)..................... 16

*Reed v. Advocate Health Care,*
    268 F.R.D. 573 (N.D. Ill. 2009) ............................................................ 32

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997).............................................................. 18

*Senter v. Gen. Motors Corp.*,
　532 F.2d 511 (6th Cir. 1976)........................................................................ 29

*Sheick v. Auto Component Carrier LCC*,
　2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)...................... 21

*Stout v. J.D. Byrider*,
　228 F.3d 709 (6th Cir. 2000)........................................................................ 28

*Thacker v. Chesapeake Appalachia, L.L.C.*,
　259 F.R.D. 262 (E.D. Ky. 2009) ............................................................ 22, 34

*UAW v. Gen. Motors Corp.*,
　497 F.3d 615 (6th Cir. 2007)........................................................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
　131 S.Ct. 2541 (2011) ................................................................................... 23

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
　§ 1522 (2d ed. 1990) .................................................................................... 15

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2005)
　§ 3.10............................................................................................................. 26
　§ 11.41 ..................................................................................................... 16, 21

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (3d ed. 1992)............... 32
　§ 18.28

Manual For Complex Litigation (Fourth) (2004)
　§ 13.12........................................................................................................... 15
　§ 21.32........................................................................................................... 23
　§ 21.63........................................................................................................... 15

Manual for Complex Litigation (Third)
　§ 30.41 (3d ed. 1995) ....................................................................... 15, 16, 23

Manual for Complex Litigation (Second)
　§ 30.46 (1986) .............................................................................................. 15

**Rules**

Federal Rules of Civil Procedure

Rule 23 .................................................................................................. 24

Rule 23(a) ........................................................................................ passim

Rule 23(a)(1) ....................................................................................... 25

Rule 23(a)(2) .................................................................................. 26-27

Rule 23(a)(3) ....................................................................................... 28

Rule 23(b) ........................................................................................... 23

Rule 23(b)(2) ....................................................................................... 34

Rule 23(b)(3) .................................................................................. 30-34

Rule 23(c)(2)(B) .................................................................................. 34

Rule 23(g) ........................................................................................... 29

The End-Payor Plaintiffs ("EPPs"), on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with Mitsubishi Electric as defined below, and provisional certification of the proposed Settlement Classes in the above-entitled actions.

## PRELIMINARY STATEMENT

Automotive parts, including Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies, are among the parts at issue in these coordinated multi-district proceedings, *In re Automotive Parts Antitrust Litigation* ("Auto Parts"), MDL No. 2311. For the purpose of the proposed settlement, the automotive parts generally and the various automotive parts that are the subject of the above-entitled actions are defined as follows:

"**Automotive Parts**" means any part or part assembly designed for installation in any four-wheeled passenger automobile, van, sports utility vehicle, crossover, or pick-up truck as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, Case No. 2:13-cv-703 (Dec. 18, 2015), ECF No. 57-1 and includes Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies.

"**Alternators**" has the meaning of that term as used in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-702 (Sept. 25, 2015), ECF No. 52.

The Alternators Defendants include: DENSO Corporation, DENSO International America, Inc. (together, "DENSO"); Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc.,

1

Mitsubishi Electric Automotive America, Inc. (together, "Mitsubishi Electric" or the "Mitsubishi Electric Defendants"); Hitachi, Ltd., Hitachi Automotive Systems, Ltd. (together, "Hitachi"); Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., Robert Bosch LLC (together, "Bosch"); and Mitsuba Corporation, American Mitsuba Corporation (together, "Mitsuba").

"**Starters**" has the meaning of that term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1102 (Sept. 25, 2015), ECF No. 50.

The Starters Defendants include: DENSO; Mitsubishi Electric; Hitachi; Bosch; and Mitsuba.

"**Ignition Coils**" has the meaning of that phrase as used in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1402 (Sept. 25, 2015), ECF No. 54.

The Ignition Coils Defendants include: DENSO; Diamond Electric Mfg. Co., Ltd., Diamond Electric Mfg. Corp. (together, "Diamond Electric"); Mitsubishi Electric; Toyo Denso Co. Ltd.; and Weastec, Inc.

"**Fuel Injection Systems**" has the meaning of that phrase as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2202 (Jan. 16, 2015), ECF No. 32.

The Fuel Injection Systems Defendants include: DENSO; Hitachi; Aisan Industry Co., Ltd., Aisan Corporation of America (together, "Aisan"); Franklin Precision Industry, Inc.; Hyundam Industrial Co., Ltd.; Keihin Corporation, Keihin North America, Inc. (together, "Keihin"); Maruyasu Industries Co., Ltd.; Mikuni Corporation, Mikuni American Corporation (together, "Mikuni"); Mitsuba; Mitsubishi Electric; and Bosch.

"**Valve Timing Control Devices**" has the meaning of that phrase as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2502 (Jan. 16, 2015), ECF No. 32.

The Valve Timing Control Devices Defendants include: DENSO; Hitachi; Aisin; Delphi Automotive LLP, Korea Delphi Automotive Systems Corporation (together, "Delphi"); Mitsubishi Electric; and Mikuni Corporation and Mikuni American Corporation (together, "Mikuni").

"**Automotive Wire Harness System**" has the meaning of that phrase as used in Paragraph 3 of the Third Consolidated Class Action Complaint, Case No. 2:13-cv-102 (Oct. 17, 2014), ECF No. 218.

The Automotive Wire Harness System Defendants include: DENSO; Fujikura Ltd., Fujikura Automotive America LLC (together, "Fujikura"); Furukawa Electric Co., Ltd., American Furukawa, Inc., and Furukawa Wiring Systems America, Inc. (together, "Furukawa"); G.S. Electech Inc. and GSW Manufacturing Inc. (together, "G.S. Electech"); Kyungshin-Lear Sales and Engineering, LLC, and Lear Corporation ("Lear"); Leoni Wiring Systems, Inc. and Leonische Holding, Inc. (together, "Leoni"); Mitsubishi Electric; Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., and Sumitomo Wiring Systems (U.S.A.) (together, "Sumitomo"); Tokai Rika Co., Ltd. and TRAM, Inc. (together, "Tokai Rika"); Yazaki Corporation and Yazaki North America (together, "Yazaki"); and other unnamed co-conspirators.

"**HID Ballasts**" has the meaning of that phrase as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1702 (June 20, 2014), ECF No. 24.

The HID Ballasts Defendants include: Panasonic Corporation, Panasonic Corporation of North America (together, "Panasonic"); Stanley Electric U.S. Co., Inc., Stanley Electric Co., Ltd.,

3

II Stanley Co., Inc. (together, "Stanley Electric"); Koito Manufacturing Co., Ltd.; North American Lighting, Inc.; Mitsubishi Electric; and Ichikoh Industries, Ltd.

"**Electronic Powered Steering Assemblies**" has the meaning of that phrase as used in Paragraph 3 of the Consolidated Second Amended Class Action Complaint, Case No. 2:13-cv-1902 (Oct. 26, 2015), ECF No. 88.

The Electronic Powered Steering Assemblies Defendants include: JTEKT Corporation, JTEKT Automotive North America, Inc. (together, "JTEKT"); Showa Corporation, American Showa, Inc. (together, "Showa"); Mitsubishi Electric; Mitsuba; NSK Ltd., NSK Steering Systems Co., Ltd., NSK Americas, Inc., NSK Steering Systems America, Inc. (together, "NSK"); and Yamada Manufacturing Co., Ltd. and Yamada North America, Inc.

These actions arise from a conspiracy or set of closely interrelated conspiracies by and among the automotive industry's largest manufacturers, marketers, and sellers of automotive parts to fix prices, rig bids, and allocate the market and customers in the United States for the sale of such products.

EPPs filed the first class action complaints involving Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies (collectively, the "Complaints") against the foregoing Defendants between October 27, 2011 and October 3, 2013. On December 18, 2015, the EPPs filed a motion for leave to file the Proposed Consolidated Amended Complaint, in which the EPPs have alleged a broad conspiracy as to all "Automotive Parts," as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint. The Complaints and the Proposed Consolidated Amended Complaint assert claims for relief under the Sherman Act, 15 U.S.C. § 1, and various State antitrust, unjust enrichment, and consumer protection laws. On April 13, 2016, the Court

4

denied EPP's Motions to Consolidate and Amend Complaints and to proceed with the Proposed Consolidated Amended Complaint.

EPPs' complaints involving Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies (Case Nos. 2:13-cv-00703, 2:13-cv-01103, 2:13-cv-01403, 2:13-cv-02203, 2:13-cv-02503, 2:13-cv-00103, 2:13-cv-01703, 2:13-cv-01903) were each centralized for coordinated pretrial purposes. The Court also appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Counsel for the End-Payor Actions in the Master Docket for MDL No. 2311. *See id., citing* Master File No. 2:12-md-2311, Case No. 2:12-cv-00100 (Aug. 7, 2012, ECF No. 271). From the inception of these cases, Interim Co-Lead Class Counsel have represented the interests of the classes of EPPs, including overseeing and directing the prosecution and settlement of the claims brought against the Mitsubishi Electric Defendants. This proposed settlement is a result of those efforts.

EPPs and the classes they represent are consumers and businesses who indirectly purchased or leased four-wheeled passenger automobile, van, sports utility vehicle, crossover, or pick-up trucks in the United States not for resale containing Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies made by MELCO or a co-defendant (i) as a component or (ii) purchased Automotive Parts, including Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Power Steering Assemblies made by MELCO or a co-defendant in the United States as replacement parts.

5

EPPs allege that, in furtherance of the alleged conspiracy or conspiracies, Defendants agreed, during meetings and conversations, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of Automotive Parts, including Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Power Steering Assemblies and then sold those products at supracompetitive prices to automobile manufacturers in the United States and elsewhere. *See*, *e.g.*, EPPs' Consolidated Amended Complaint in *In re Fuel Injection Systems* ¶¶ 1, 120.

The United States Department of Justice ("DOJ") has been investigating collusion by automotive parts manufactures since at least February 2010, and the Federal Bureau of Investigation ("FBI") has participated in raids and executed search warrants carried out in some of Defendants' offices. As a result of the DOJ investigation, Mitsubishi Electric Corporation (1) agreed to plead guilty and pay a $190 million criminal fine for conspiring to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts sold to Ford, General Motors, Chrysler, Fuji Heavy Industries, Nissan, Honda, and Toyota in the United States and elsewhere, in violation of the Sherman Act, 15 U.S.C. § 1, and (2) agreed to cooperate with the DOJ in its investigation into alleged antitrust violations as to over twenty automotive parts. *See* Plea Agreement at ¶ 4, 13, *United States v. Mitsubishi Electric Corporation*, Case No. 2:13-cr-20710-GCS-PJK (E.D. Mich. Nov. 6, 2013) (ECF No. 9).

In November 2012, Mitsubishi Electric was fined ¥1,410,310,000 (equivalent to over $17 million at the time) by the Japanese Fair Trade Commission relating to Alternators and Starters. *See The JFTC Issued Cease and Desist Orders and Surcharge Payment Orders to Participants in*

*Bid-rigging Conspiracies for Automotive Parts*, Nov. 22, 2012. In January 2016, Mitsubishi Electric was fined €137,789,000 (equivalent to over $149.4 million at the time) by the European Commission for colluding on prices of Alternators and Starters. *See Antitrust: Commission Fines Car Parts Producers € 137 789 000 in Cartel Settlement*, Jan. 27, 2016.

The settlement between the EPPs and the Mitsubishi Electric Defendants is meaningful and substantial and will result in a payment of $64,229,268 for the benefit of the EPP Classes, a very significant achievement in this litigation. Standing alone, the monetary recovery from the Mitsubishi Electric Defendants is remarkable, but the settlement is also valuable to the EPPs in that it requires the Mitsubishi Electric Defendants to provide comprehensive cooperation in the form of, *inter alia*, attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in these cases. The EPPs have reason to believe that the cooperation provided by the Mitsubishi Electric Defendants will fundamentally change the complexion of the litigation against some of the non-settling Defendants. The EPPs believe that this cooperation will show that one of the non-settling Defendants – the largest conspirator in these cases – withheld critical evidence from the DOJ, this Court, and EPPs in this litigation. The ability to obtain such assistance without protracted and expensive discovery is extremely valuable to the EPPs. The Mitsubishi Electric Defendants' cooperation agreement will greatly enhance the EPPs' ability to prosecute their claims against the remaining non-settling Defendants.

Additionally, the Mitsubishi Electric Defendants' sales will remain in the case for purposes of computing the treble damages claim against the non-settling Defendants in accordance with governing law and shall be part of any joint and several liability claims against other current or future defendants. *See* Settlement Agreement ¶ 67. The EPPs and the members of the proposed

7

Settlement Classes will retain their ability to recover from the remaining Defendants the entire amount of damages caused by the alleged conspiracies, even those attributable to the Mitsubishi Electric Defendants, less only the amount paid by the Mitsubishi Electric Defendants in settlement.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth, that the settlement with the Mitsubishi Electric Defendants is in the best interest of the proposed Settlement Classes and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1. Preliminarily approving the settlement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against the Mitsubishi Electric Defendants in accordance with the terms of the Settlement Agreement; and

4. Appointing Interim Co-Lead Class counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with the Mitsubishi Electric Defendants arises from extensive arm's length and good faith negotiations. The EPPs' counsel participated in intensive fact-gathering sessions and informational meetings, as well as extensive negotiations that took place over several months through telephone calls, in-person meetings, and other communications, including with the assistance of a mediator.

**Settlement Classes**: The Settlement Agreement defines the Settlement Classes in the various actions as follows:

(a)     "Alternators Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Alternators as a component part, or indirectly purchased one or more Alternators as a replacement part, which were manufactured or sold by a

8

Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Alternators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Alternators directly or for resale.

(b)  "Starters Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Starters as a component part, or indirectly purchased one or more Starters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Starters Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Starters directly or for resale.

(c)  "Ignition Coils Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Ignition Coils as a component part, or indirectly purchased one or more Ignition Coils as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Ignition Coils Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Ignition Coils directly or for resale.

(d)  "Fuel Injection Systems Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Fuel Injection Systems as a component part, or indirectly purchased one or more Fuel Injection Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Fuel Injection Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fuel Injection Systems directly or for resale.

9

(e)      "Valve Timing Control Devices Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Valve Timing Control Devices as a component part, or indirectly purchased one or more Valve Timing Control Devices as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Valve Timing Control Devices Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Valve Timing Control Devices directly or for resale.

(f)      "Automotive Wire Harness Systems Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Automotive Wire Harness Systems as a component part, or indirectly purchased one or more Automotive Wire Harness Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Automotive Wire Harness Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly or for resale.

(g)      "HID Ballasts Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more HID Ballasts as a component part, or indirectly purchased one or more HID Ballasts as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the HID Ballasts Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased HID Ballasts directly or for resale.

(h)      "Electronic Powered Steering Assemblies Settlement Class" is defined as:

All persons and entities who, from July 1, 1998, through the Execution Date purchased or leased a new vehicle in the United States not for resale, which included one or more Electronic Powered Steering Assemblies as a component part, or indirectly purchased one or more Electronic Powered Steering Assemblies as a

10

replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants. Excluded from the Electronic Powered Steering Assemblies Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Electronic Powered Steering Assemblies directly or for resale.

Settlement Agreement, ¶ 23.

"Vehicle," as used in these class definitions, is limited to four-wheeled passenger automobiles, vans, sports utility vehicles, crossovers, and pick-up trucks.

**Settlement Amount**: The Mitsubishi Electric Defendants have agreed to pay $64,229,268 by wiring such funds to one or more escrow accounts ("Escrow Account(s)") established at Wells Fargo Bank within thirty (30) days following the later of (a) the date the Court grants preliminary approval of this proposed settlement or (b) the Mitsubishi Electric Defendants being provided with the account number, account name, and wiring information for the Escrow Account(s). *Id.* ¶¶ 38, 40.

**Cooperation**: The Mitsubishi Electric Defendants have agreed to provide extensive cooperation to the EPPs that will significantly aid in their prosecution of claims against the remaining Defendants. A general summary of the Mitsubishi Electric Defendants' cooperation obligations is provided below. The terms of this cooperation agreement are set forth in fuller detail in Section J (¶¶ 47-61) of the Settlement Agreement. The Mitsubishi Electric Defendants' obligation to cooperate includes, among many other things, the duty to provide:

48.   Transactional Data. At the request of End-Payor Plaintiffs and subject to meet and confer with the Mitsubishi Electric Defendants as to any reasonable limitations on this obligation, the Mitsubishi Electric Defendants will produce within one hundred eighty (180) days, pre-existing transactional data related to Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies. The Mitsubishi Electric Defendants will use

11

reasonable efforts to produce the foregoing transactional data as soon as reasonably possible after execution of the Agreement. The Mitsubishi Electric Defendants will produce additional transactional data as to any other Automotive Parts at the request of the End-Payor Plaintiffs, subject to reasonable limitation. The time period for this production will be from January 1, 1996 to a date no later than two years after the execution date of this Agreement. The precise end-date for this production obligation will be agreed upon by the parties in subsequent meet and confer discussions, taking into account the burden of producing the transactional data and the End-Payor Plaintiffs' need for that data.

49.   Documents. The Mitsubishi Electric Defendants have provided to Jenner & Block a substantial number of potentially relevant Documents ("Relevant Documents") in connection with investigations by various Government Entities and in connection with the MDL Proceeding. The Mitsubishi Electric Defendants will make the Relevant Documents available for inspection and copying by the End-Payor Plaintiffs, provided that the Mitsubishi Electric Defendants will not be required to make available to End-Payor Plaintiffs any documents protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a Government Entity. As to Documents in their possession, custody, or control that are not Relevant Documents (as defined above), the Mitsubishi Electric Defendants will consider in good faith any reasonable request by End-Payor Plaintiffs to collect and make such Documents available for inspection and copying, provided the request would not impose an undue burden on the Mitsubishi Electric Defendants.

52.   Other Cooperation. At the request of End-Payor Plaintiffs, the Mitsubishi Electric Defendants will also provide the following types of cooperation relating to alleged antitrust violations as to Released Parts[2]: (1) providing a list of current or former officers, directors or employees who were interviewed by any Government Entity, who testified before a grand jury in connection with the DOJ's investigation, or were disclosed to any Government Entity as having knowledge of alleged antitrust violations as to Released Parts; (2) Jenner & Block attorney proffers ("Attorney Proffers"), (3) witness interviews, (4) deposition testimony in the MDL Proceeding, (5) declaration or affidavits in the MDL Proceeding, and (6) trial testimony in the MDL Proceeding. While there will be no limitation on the number of proffers, depositions, declarations, affidavits, or trial testimony, End-Payor Plaintiffs agree to request such cooperation only when reasonably necessary to their prosecution of the cases in the MDL Proceeding. If any such interview, deposition, or trial testimony takes place outside of the country of the witness's residence,

---

[2] "Released Parts" refer to Automotive Parts as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, including Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies.

Settlement Class Counsel shall reimburse the Mitsubishi Electric Defendants for such person's economy class fare and up to $450 per day for lodging and expenses actually incurred.

(*Id.* at ¶¶ 48, 49, 52.)

**Released Claims**: The Settlement Agreement releases only the Mitsubishi Electric Defendants (and their respective past and present, direct and indirect, parents, subsidiaries, associates, and affiliates, including but not limited to the predecessors, successors and assigns of each of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing) from all Settlement Class Member claims arising out of or relating in any way to any conduct alleged in the Complaints,[3] the Proposed Consolidated Amended Complaint, or any act or omission of the Mitsubishi Electric Defendants, concerning the parts subject to those actions. *See* Settlement Agreement ¶¶ 20, 21.

The release does not include (1) any claims made by direct purchasers of Released Parts; (2) any claims made by automobile dealerships that are indirect purchasers of Released Parts in

---

[3] "Complaints" means each of the following: (a) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-703 (July 16, 2015), ECF No. 42 (Alternators); (b) the Second Amended Consolidated Class Action Complaint, Case No. 2:13-cv-1903 (Oct. 2, 2015), ECF No. 84 (Electronic Powered Steering Assemblies); (c) the Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2203 (Jan. 16, 2015), ECF No. 27 (Fuel Injection Systems); (d) the Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1703 (June 13, 2014), ECF No. 9 (HID Ballasts); (e) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1403 (Aug. 11, 2015), ECF No. 39 (Ignition Coils); (f) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1103 (July 16, 2015) ECF No. 52 (Starters); (g) the Second Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2503 (Feb. 18, 2015), ECF No. 52 (Valve Timing Control Devices); and (h) the Fourth Amended Consolidated Class Action Complaint, Case No. 2:13-cv-103 (October 17, 2014), ECF No. 233 (Wire Harness Products). "Proposed Consolidated Amended Complaint" means the [Proposed] Consolidated Amended Class Action Complaint, Case No. 2:13-cv-703 (Dec. 18, 2015), ECF No. 57-1 (Automotive Parts).

13

the MDL Proceeding; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to Released Parts; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, warranty, securities, or similar claim relating to Released Parts; (5) claims concerning any product other than Released Parts; (6) claims under laws other than those of the United States relating to purchases of Released Parts made outside of the United States; and (7) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State *Id*. ¶ 36. The Settlement Agreement also provides that the Mitsubishi Electric Defendants' sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracies. *Id.* ¶ 67.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel with the assistance of an experienced mediator—but also a thoughtfully conceived resolution of the proposed Settlement Classes' claims that maximizes their recovery and guarantees early, significant cooperation by the Mitsubishi Electric Defendants in the continued prosecution of EPPs' claims.

## I.   Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval.

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (*citing UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring

14

settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (*quoting* MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (*citing* 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting,* 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

15

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (*quoting* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)). *See also In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), *quoting*

16

*Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

### A.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (*quoting Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process would be all the more complicated due to

17

the unique issues that attend discovery against foreign parties.[4] Additionally, the Mitsubishi Electric Defendants would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See*, *e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for

---

[4] Because Interim Co-Lead Class Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Classes preclude a more detailed discussion of their potential litigation risks. Instead, Class Counsel here recite the arguments that have been and are expected to be raised by its Defendants.

18

plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Classes. The Mitsubishi Electric Defendants' $64,229,268 payment provides for significant compensation to the proposed Settlement Classes that will be available years earlier than would be the case if litigation against the Mitsubishi Electric Defendants continued through trial and appeal. Settlements of this type, before discovery has been completed, create value beyond their direct pecuniary benefit to the class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *50-51 (noting "significant value" of icebreaker settlement); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 *16 (S.D. Tex. Jan. 27, 1981) ("*Corrugated Container*").

Of particular importance is the fact that the Settlement Agreement requires the Mitsubishi Electric Defendants to provide substantial discovery cooperation to Interim Co-Lead Class Counsel by providing transactional data, factual proffers, interviews, documents, depositions, and trial testimony, among other cooperation. *See* Settlement Agreement § J (¶¶ 47-61). This cooperation agreement is extremely valuable to the classes. The cooperation to be provided by the terms of the Settlement Agreement will afford the EPPs access to transactional data, documents, and witnesses without protracted and expensive discovery—a significant class-wide benefit. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard***Error! Bookmark not defined.**, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The value of an early settlement can be so great that early-settling defendants often obtain a substantial discount relative to the remaining defendants. The *Linerboard* court, for example, approved a settlement with the first-settling defendant for less than one percent of sales and approximately one-third of the percentage of sales obtained from the other defendants. *Compare Linerboard*, 292 F. Supp. 2d at 643 (approving icebreaker settlement for approximately 0.4% of sales), *with In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) (approving settlements with final two defendants for 1.6% and 2% of sales). In accepting this discounted

20

recovery from the first-settling defendants, the *Linerboard* court emphasized the "substantial" intangible benefit to the class of the icebreaker agreement. 292 F. Supp. 2d at 643.

The Settlement Agreement also specifically provides that it does not alter the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by these Defendants. *See* Settlement Agreement ¶ 67. In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here too, the EPPs will be able to pursue their full damages, with no diminution other than deduction of the actual Mitsubishi Electric settlement amount.

**B.    The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel With the Assistance of a Mediator.**

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel with the assistance of an internationally-renowned mediator. Newberg § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great

21

weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The Settlement Agreement, in its initial form, was negotiated for months by Interim Co-Lead Class Counsel in a process that involved multiple discussions with counsel for the Mitsubishi Electric Defendants, including in-person meetings. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists before negotiating this deal.

Counsel for the EPPs was well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich.

22

2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at \*5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

## II.    The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at \*27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that, particularly in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have

23

been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.    The Proposed Settlement Classes Meet the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

24

      **i.**      **The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court.**

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Classes consist of all persons and entities who, from July 1, 1998, through the Execution Date of the Settlement Agreement between the Mitsubishi Electric Defendants and the EPPs, purchased or leased a new vehicle in the United States not for resale which included one or more Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, or Electronic Powered Steering Assemblies manufactured by MELCO or a co-defendant as a component part or indirectly purchased one or more of these products as a replacement part. Since then, it is beyond dispute that millions of persons and entities throughout the United States have purchased or leased vehicles containing Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies for personal use. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impractical – if not impossible.

25

ii.     **End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions.**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Here, EPPs have identified the following issues common to the proposed Settlement Classes:

- Whether Defendants engaged in combinations and conspiracies among themselves to fix, raise, maintain, or stabilize the prices of Alternators, Starters, Ignition Coils, Fuel Injection

26

Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies sold in the United States;

- Whether Defendants engaged in combinations and conspiracies among themselves to rig bids quoted to customers of Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies sold in the United States;

- Whether Defendants engaged in combinations and conspiracies to allocate customers and the markets for Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies sold in the United States;

- The duration of the illegal conspiracy or conspiracies;

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies; and

- Whether unlawful overcharges on the price of Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies were passed through to the indirect purchasers of Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies, and if so, the appropriate measure of damages.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-*

27

*Merenda*, 2013 U.S. Dist. LEXIS 131006, at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class representatives and the members of the proposed Settlement Classes believe they are all victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies and seek the same relief, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

> iv.   **Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes.**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two

criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the proposed Settlement Classes because EPPs and members of the proposed Settlement Classes: (i) purchased in the United States motor vehicles containing the relevant parts; and/or (ii) indirectly purchased the relevant parts, have the same interest in establishing liability, and all seek damages for the ensuing overcharge. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). EPPs and the members of the proposed Settlement Classes also share a common interest in obtaining the Mitsubishi Electric Defendants' substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Classes are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim

29

Co-Lead Class Counsel in this action and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. For the same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.  The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.  Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not

30

destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Classes under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at 1191.[5]

Because the EPPs allege conduct from which all proposed Settlement Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members—for example, the existence and scope of the alleged price-fixing conspiracy or conspiracies among Defendants, the market impact of Defendants' conspiracy or conspiracies, and the aggregate amount of damage suffered by the class as a result of the alleged antitrust violations—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D.

---

[5] The Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), supports the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court found that the plaintiffs failed to establish that damages could be measured on a class-wide basis because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner common to the class. 133 S.Ct. at 1429-31. Under *Comcast*, plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *See Levva v. Medline Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013). Here, all of the proposed Settlement Class's claimed damages—the overcharge suffered as a result of inflated vehicle components—stem from the Defendants' alleged price-fixing conspiracy or conspiracies.

251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (*quoting Amchem*, 521 U.S. at 625).[6] Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones; *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized

---

[6] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

issues does not defeat predominance). Issues common to the proposed Settlement Classes predominate in these cases—all EPPs allegedly paid overcharges that were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Classes.

### ii.   A Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of Settlement Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Untold numbers of Settlement Class members purchased vehicles containing the relevant parts as a component part or indirectly purchased the relevant parts as a replacement part for a vehicle during the settlement class period; resolving these claims in the

33

context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[7]

      **C.**    **The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(2).**

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ." Claims for non-monetary relief, like those asserted under state laws, including those states that do not recognize claims for money damages by indirect purchasers in antitrust actions, are properly certified under Rule 23(b)(2).

**III.**    **Notice to the Class Members.**

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties."

---

[7] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

*Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (*citing Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and of this Agreement to all members of the Settlement Classes identified by End-Payor Plaintiffs (the "Notice Motions")." Settlement Agreement ¶ 32. The Notice Motions shall include "a proposed form of, method for, and date of dissemination of notice in each Action." *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against the Mitsubishi Electric Defendants (as defined in the Settlement Agreement with the same) in accordance with the terms of the Settlement Agreement;

4. Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

Date: April 15, 2016                    Respectfully submitted,

                                         */s/ Steven N. Williams*
                                        Steven N. Williams

35

Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Hsalzman@RobinsKaplan.com
Bpersky@RobinsKaplan.com
Wreiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the
Proposed End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard

36

Mariell R. McLatcher
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com
mrm@ millerlawpc.com

*Interim Liaison Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2016 I caused the foregoing END-PAYOR PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH MITSUBISHI ELECTRIC DEFENDANTS AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven N. Williams*
Steven N. Williams

38