# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| IN RE: AUTOMOTIVE PARTS ANTITRUST | : | Master File No. 12-md-02311 |
| LITIGATION | : | Honorable Marianne O. Battani |
| | : | |
| | : | |
| In Re: Wire Harness | : | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Bearings | : | 2:12-cv-00503 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | : | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generator | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Electronic Powered Steering Assemblies | : | 2:13-cv-01903 |
| In Re: Fan Motors | : | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | 2:13-cv-02803 |
| In Re: Spark Plugs | : | 2:15-cv-03003 |
| In Re: Automotive Hoses | : | 2:15-cv-03203 |
| In Re: Ceramic Substrates | : | 2:16-cv-03803 |
| In Re: Power Window Switches | : | 2:16-cv-03903 |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| End-Payor Actions | : | |

# END-PAYOR PLAINTIFFS' MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 2 SETTLEMENTS AND APPROVING THE PLAN OF ALLOCATION IN CONNECTION WITH THE ROUND 2 SETTLEMENTS

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, End-Payor Plaintiffs ("EPPs") respectfully move the Court for Orders: (1) finally approving the settlements between EPPs and twelve additional settling defendants ("Round 2 Settlements"); (2) granting final certification, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), of the settlement classes included in the Round 2 Settlements, which were previously provisionally certified by the Court for settlement purposes only; (3) confirming the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 2 Settlement Classes; and (4) approving the identical Plan of Allocation in connection with the Round 2 Settlements that was previously approved by the Court in connection with the first round of settlements.  *See Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473.

Dated: February 9, 2017

Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
David Kurlander
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
wreiss@robinskaplan.com
dkurlander@robinskaplan.com

1

*/s/ Steven N. Williams*
Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the
Proposed End-Payor Plaintiff Classes*

2

_/s/ E. Powell Miller_
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

_Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes_

3

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Wire Harness | | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | | 2:12-cv-00203 |
| In Re: Fuel Senders | | 2:12-cv-00303 |
| In Re: Heater Control Panels | | 2:12-cv-00403 |
| In Re: Bearings | | 2:12-cv-00503 |
| In Re: Alternators | | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | | 2:13-cv-00903 |
| In Re: Radiators | | 2:13-cv-01003 |
| In Re: Starters | | 2:13-cv-01103 |
| In Re: Ignition Coils | | 2:13-cv-01403 |
| In Re: Motor Generators | | 2:13-cv-01503 |
| In Re: HID Ballasts | | 2:13-cv-01703 |
| In Re: Inverters | | 2:13-cv-01803 |
| In Re: Electronic Powered Steering Assemblies | | 2:13-cv-01903 |
| In Re: Air Flow Meters | | 2:13-cv-02003 |
| In Re: Fan Motors | | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | | 2:13-cv-02203 |
| In Re: Power Window Motors | | 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | | 2:13-cv-02803 |
| In Re: Spark Plugs | | 2:15-cv-03003 |
| In Re: Automotive Hoses | | 2:15-cv-03203 |
| In Re: Ceramic Substrates | | 2:16-cv-03803 |
| In Re: Power Window Switches | | 2:16-cv-03903 |
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | | |

## END-PAYOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 2 SETTLEMENTS AND APPROVING THE PLAN OF ALLOCATION IN CONNECTION <u>WITH THE ROUND 2 SETTLEMENTS</u>

## **Statement of Issues**

1. Whether the settlements between End-Payor Plaintiffs ("EPPs") and twelve additional settling defendants ("Round 2 Settlements") are fair, reasonable, and adequate, and should be granted final approval under Federal Rule of Civil Procedure 23?

   Yes.

2. Whether the Court should grant final certification of the settlement classes provided for by the Round 2 Settlements, which it previously conditionally certified?

   Yes.

3. Whether the Court should confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 2 Settlement Classes?

   Yes.

4. Whether the Court should approve EPPs' Plan of Allocation in connection with the Round 2 Settlements where the Court previously approved the identical Plan of Allocation in connection with the Round 1 Settlements (Order Granting End-Payor Plaintiffs' Amended Motion for Approval of Plan of Allocation of Settlement Proceeds, *Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473)?

   Yes.

## <u>Controlling or Most Appropriate Authorities</u>

- *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

- *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

- *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 3

I.   THE ROUND 2 SETTLEMENTS PROVIDE SUBSTANTIAL BENEFITS TO
     EPPS ............................................................................................................ 3

     A.   Cash Components of the Round 2 Settlements ..................................... 3

     B.   Cooperation and Other Terms of the Round 2 Settlements ................. 6

II.  THE SEPTEMBER 2016 NOTICE PROGRAM WAS CARRIED OUT AND
     PROVIDED ADEQUATE NOTICE OF THE ROUND 2 SETTLEMENTS .................. 8

III. THE REACTION OF MEMBERS OF THE ROUND 2 SETTLEMENT
     CLASSES HAS BEEN POSITIVE ...................................................................... 10

LEGAL STANDARD .............................................................................................. 11

ARGUMENT .......................................................................................................... 12

I.   THE ROUND 2 SETTLEMENTS ARE FAIR, REASONABLE, AND
     ADEQUATE AND SHOULD RECEIVE FINAL APPROVAL .............................. 12

     A.   The Likelihood of EPPs' Success on the Merits, Weighed Against the
          Relief Provided by the Round 2 Settlements, Supports Final Approval ............. 13

     B.   The Complexity, Expense, and Likely Duration of Continued Litigation
          Favor Final Approval ....................................................................... 15

     C.   The Judgment of Experienced Counsel Who Have Evaluated the Strength
          of the Claims, Defenses, and Risks Supports Approval ..................... 16

     D.   The Reaction of Class Members Weighs in Favor of Final Approval ............... 17

     E.   The Round 2 Settlements Are Consistent with the Public Interest ..................... 18

     F.   The Round 2 Settlements Are the Result of Thorough Arm's-Length
          Negotiations Conducted by Highly Experienced Counsel .................. 19

II.  NOTICE OF THE ROUND 2 SETTLEMENTS SATISFIED THE
     REQUIREMENTS OF RULE 23(E) AND DUE PROCESS .......................................... 19

III. THE CAFA NOTICE REQUIREMENT HAS BEEN SATISFIED BY EACH OF
     THE ROUND 2 SETTLING DEFENDANTS .............................................................. 21

IV.  THE COURT SHOULD CERTIFY THE ROUND 2 SETTLEMENT CLASSES ........ 21

     A.   The Round 2 Settlement Classes Satisfy Rule 23(a) .......................... 22

          1.   Numerosity ................................................................................ 22

          2.   Commonality .............................................................................. 22

          3.   Typicality ................................................................................... 23

         4.      Adequacy ........................................................................... 24

   B.      The Round 2 Settlement Classes Satisfy Rule 23(b)(3)...................................... 25

         1.      Predominance ..................................................................... 25

         2.      Superiority........................................................................ 27

V.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION IN CONNECTION WITH THE ROUND 2 SETTLEMENTS ........................................... 28

CONCLUSION........................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................21, 25, 28

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  133 S. Ct. 1184 (2013)..............................................................26

*Bacon v. Honda of Am. Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) .....................................................22

*Beanie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) .....................................................25

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)....................................................................12

*Cason-Merenda v. VHS of Mich., Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) ............................................26

*Date v. Sony Elecs., Inc.*,
  No. 07-cv-15474, 2013 U.S. Dist. LEXIS 108095
  (E.D. Mich. Jul. 31, 2013) ........................................................16

*Dick v. Spring Commc'ns*,
  297 F.R.D. 283 (W.D. Ky. 2014)...........................................11, 16

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) .....................................................19

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) .....................................................22

*Grenada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ...................................................13

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
  (E.D. Mich. Dec. 12, 2013)...............................................11, 17, 22

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) .....................................................20

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) .........................................18

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ..........................................................11, 15, 18

*In re Chambers Dev. Sec. Litig.,*
    912 F. Supp. 822 (W.D. Pa. 1995) ....................................................................14

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,*
    248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................16

*In re Flonase Antitrust Litig.,*
    284 F.R.D. 207 (E.D. Pa. 2012).........................................................................28

*In re Foundry Resins Antitrust Litig.,*
    242 F.R.D. 393 (S.D. Ohio 2007) ........................................................... *passim.*

*In re Linerboard Antitrust Litig.,*
    292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.,*
    169 F.R.D. 493 (S.D.N.Y. 1996) .......................................................................28

*In re Packaged Ice Antitrust Litig.,*
    No. 08-md-01952, 2011 U.S. Dist. LEXIS 17255
    (E.D. Mich. Feb. 22, 2011) ..................................................................... *passim.*

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) .......................................................................26, 27

*In re Telectronics Pacing Sys. Inc.,*
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................11, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    267 F.R.D. 583 (N.D. Cal. 2010).......................................................................23

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    722 F.3d 838 (6th Cir. 2013) .......................................................................21, 26

*IUE-CWA v. Gen. Motors Corp.,*
    238 F.R.D. 583 (E.D. Mich. 2006) ............................................................11, 12, 13

*Marcus v. Dep't of Revenue,*
    206 F.R.D. 509 (D. Kan. 2002)..........................................................................25

*Paper Sys. Inc. v. Mitsubishi Corp.,*
    193 F.R.D. 601 (E.D. Wis. 2000) ......................................................................28

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985).............................................................................................19

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
  825 F.3d 299 (6th Cir. 2017) ...................................................................13

*Sheick v. Auto. Component Carrier LLC*,
  No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411
  (E.D. Mich. Oct. 18, 2010) .........................................................13, 17, 20

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990).....................................................................18

*Taifa v. Bayh*,
  846 F. Supp. 723 (N.D. Ind. 1994) .........................................................18

*TBK Partners, Ltd. v. Western Union Corp.*,
  675 F.2d 456 (2d Cir. 1982).....................................................................18

*Int'l Union, UAW v. Ford Motor Co.*,
  No. 05-cv-74730, 2006 U.S. Dist. LEXIS 70471
  (E.D. Mich. July 13, 2006) ......................................................................12

*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .........................................................11, 19, 20

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ...................................................................11

**Statutes**

28 U.S.C. § 1711...........................................................................................21

28 U.S.C. § 1715(b).......................................................................................21

**Rules**

Fed. R. Civ. P. 23............................................................................... *passim.*

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.311 (2004) ..........................19

vii

**Introduction**

End-Payor Plaintiffs ("EPPs") respectfully seek final approval of the settlements between EPPs and twelve additional settling defendants ("Round 2 Settlements") in the above-captioned actions ("Actions").

The Round 2 Settlements collectively provide $379,401,268 million in cash for the benefit of the settlement classes included in the Round 2 Settlements ("Round 2 Settlement Classes") and require all of the twelve additional settling defendants ("Round 2 Settling Defendants") to provide significant cooperation to the EPPs in the continued prosecution of EPPs' claims against the Defendants remaining in the Actions ("Non-Settling Defendants"). The Round 2 Settlements also provide that, with one exception, each of the Round 2 Settling Defendants will for a period of two years refrain from engaging in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue in the Actions.

The Round 2 Settlements reflect EPPs' ongoing successful efforts to resolve their claims against the Defendants in *In re Automotive Parts Antitrust Litigation*, MDL No. 12-md-2311 ("*Auto Parts Litigation*"). This Court previously granted EPPs' Motion for Final Approval of Settlements with Certain Defendants ("Round 1 Settlements"). *See, e.g.*, Amended Opinion and Order Granting Final Approval of Class Action Settlement, *Wire Harness*, 12-cv-00103, ECF No. 512 ("Round 1 Final Approval Order"). The Round 1 Settlements made available $224,668,350 in cash for the benefit of the settlement classes included in the Round 1 Settlements ("Round 1 Settlement Classes"). They also required the eleven Defendants who were parties to those settlements ("Round 1 Settling Defendants") to provide cooperation relevant to EPPs' ongoing claims against the remaining Defendants in those actions. In granting final approval of the Round 1 Settlements, the Court concluded that: (1) the Round 1 Settlements

1

were fair, reasonable, and adequate and provided significant benefits to the Round 1 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 1 Final Approval Order at 15-26; 26-27.

As set forth below, the Round 2 Settlements likewise provide an excellent result for the Round 2 Settlement Classes in light of the substantial risks of continuing litigation. In negotiating the Round 2 Settlements, Settlement Class Counsel[1] took into account the amounts of the respective Round 2 Settlements, available evidence supporting EPPs' claims, the dollar volume of the commerce affected by the particular Round 2 Settling Defendant's conduct, the defenses that the Round 2 Settling Defendants raised or were expected to raise, and the substantial value provided by the Round 2 Settling Defendants' agreements to cooperate with EPPs in the continued prosecution of their claims against the Non-Settling Defendants. EPPs therefore respectfully submit that the proposed Round 2 Settlements are fair, reasonable, and adequate, and should be granted final approval.

Notice of the Round 2 Settlements was provided through the notice plan approved by the Court ("September 2016 Notice Program"). The response from members of the Round 2 Settlement Classes has been positive. As of February 8, 2017, there have been no objections to, or requests for exclusion from the Round 2 Settlements. *See* Declaration of Lori L. Castaneda Regarding September 2016 Notice Dissemination and Settlement Administration ("Castaneda Decl.") ¶¶ 21-22, submitted herewith. As reflected in the September 16 Notice Program, Round 2 Settlement Class Members have until March 16, 2017 to object to or request exclusion from

---

[1] In granting preliminary approval of each of the Round 2 Settlements, the Court preliminarily appointed Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel. *See, e.g.*, Order Granting Preliminary Approval of Settlement with DENSO at ¶ 7, *Wire Harness*, 2:12-cv-00103, ECF No. 534.

the Round 2 Settlement Classes.  *See, e.g.*, Long Form Notice (Exhibit 7), *Wire Harness*,12-cv-00103, ECF No. 527-6.

To effectuate the Round 2 Settlements, it is also respectfully submitted that the Court grant final certification to the Round 2 Settlement Classes, which it has already provisionally certified for settlement purposes. The Round 2 Settlement Classes meet all of the requirements for certification as settlement classes and should be granted final certification.  The Court should also confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 2 Settlement Classes.

Finally, EPPs respectfully request that the Court approve the Plan of Allocation for the Round 2 Settlements. This Plan of Allocation is virtually identical to EPPs' Plan of Allocation for the Round 1 Settlements, which the Court previously approved. ("Plan of Allocation Order") (*see Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473). EPPs respectfully request that, upon granting final approval of the Round 2 Settlements, the Court also enter Orders approving EPPs' Plan of Allocation in connection with each of the Round 2 Settlements.

## Background

## I.     The Round 2 Settlements Provide Substantial Benefits to EPPs

### A.     Cash Components of the Round 2 Settlements

The Round 2 Settlements include twelve defendant families and their affiliates. The Round 2 Settling Defendants are: (1) Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC (collectively, "Aisin Seiki"); (2) DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO Automotive Deutschland GmbH, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., and ASMO Manufacturing, Inc. (collectively, "DENSO"); (3)

Furukawa Electric Co., Ltd. and American Furukawa, Inc. (collectively, "Furukawa"); (4) G.S. Electech, Inc., G.S. Wiring Systems Inc., and G.S.W. Manufacturing, Inc. (collectively, "G.S. Electech"); (5) Leoni Wiring Systems, Inc. and Leonische Holding Inc. (collectively, "Leoni"); (6) Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "MELCO"); (7) NSK Ltd., NSK Americas, Inc., NSK Steering Systems Co., Ltd., and NSK Steering Systems America, Inc. (collectively, "NSK"); (8) Omron Automotive Electronics Co. Ltd. ("Omron"); (9) Schaeffler Group USA Inc. ("Schaeffler"); (10) Sumitomo Riko Co. Ltd. and DTR Industries, Inc. (collectively, "Sumitomo Riko"); (11) Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika")[2]; and (12) Valeo Japan Co., Ltd., on behalf of itself and Valeo Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp (collectively, "Valeo").

The Round 2 Settlements involve 29 automotive parts[3] that EPPs contend were the subject of illegal bid rigging and price-fixing ("Settled Parts"). The Round 2 Settling Defendants, relevant case, and amounts of the Round 2 Settlements are set forth in the following chart:

| Round 2 Settling Defendant | Automotive Parts Case | Round 2 Settlement Fund |
|---|---|---|
| Aisin Seiki | Valve Timing Control Devices | $18,620,000.00 |
| DENSO[4] | Wire Harness | $14,531,801.00 |

[2] EPPs have settled with Tokai Rika in the *Wire Harness* case only. EPPs continue to litigate the *Occupant Safety Restraint Systems*, *Heater Control Panel*, and *Switches* cases against Tokai Rika.

[3] The following actions contain multiple automotive parts: (1) Automatic Transmission Fluid Warmers (Consolidated Amended Class Action Complaint, 13-cv-02403, ECF No. 16); and (2) Spark Plugs (Class Action Complaint, 15-cv-11868, ECF No. 1).

[4] Because the Fuel Injection Systems Settlement Class included in the DENSO and MELCO settlements includes end-payor purchasers of Air Flow Meters and Electronic Throttle Bodies, the settlement agreements with DENSO and MELCO do not provide for separate settlement classes for end-payor purchasers of Air Flow Meters and Electronic Throttle Bodies. Recently,

| Round 2 Settling Defendant | Automotive Parts Case | Round 2 Settlement Fund |
|---|---|---|
| DENSO | Instrument Panel Clusters | $7,525,762.00 |
| | Fuel Senders | $187,823.00 |
| | Heater Control Panels | $14,676,679.00 |
| | Alternators | $50,449,261.00 |
| | Windshield Wiper Systems | $3,310,103.00 |
| | Radiators | $15,760,989.00 |
| | Starters | $9,709,228.00 |
| | Ignition Coils | $16,746,824.00 |
| | Motor Generators | $142,120.00 |
| | HID Ballasts | $1,424,803.00 |
| | Inverters | $142,120.00 |
| | Fan Motors | $142,120.00 |
| | Fuel Injection Systems | $19,392,650.00 |
| | Power Window Motors | $142,120.00 |
| | Automatic Transmission Fluid Warmers | $1,662,943.00 |
| | Valve Timing Control Devices | $4,362,039.00 |
| | Air Conditioning Systems | $21,836,133.00 |
| | Windshield Washer Systems | $362,978.00 |
| | Spark Plugs | $9,760,366.00 |
| | Ceramic Substrates | $1,531,138.00 |
| Furukawa | Wire Harness Systems | $42,560,000.00 |
| G.S. Electech | Wire Harness Systems | $3,040,000.00 |
| Leoni | Wire Harness Systems | $1,482,000.00 |
| MELCO | Wire Harness Systems | $3,211,463.34 |
| | Alternators | $17,129,946.08 |
| | Starters | $16,474,807.24 |
| | Ignition Coils | $14,567,197.98 |
| | HID Ballasts | $3,211,463.34 |
| | Electronic Powered Steering Assemblies | $3,211,463.34 |
| | Fuel Injection Systems | $3,211,463.34 |
| | Valve Timing Control Devices | $3,211,463.34 |
| NSK | Bearings | $22,420,000.00 |
| | Electronic Powered Steering Assemblies | $3,800,000.00 |
| Omron | Power Window Switches | $3,040,000.00 |
| Schaeffler | Bearings | $7,600,000.00 |

the Court consolidated the Air Flow Meters and Fuel Injection Systems actions. *See* Stipulation and Order to Consolidate Air Flow Meters Actions and Fuel Injection Systems Actions, 2:13-cv-2003, ECF No. 88. In addition, EPPs intend to move the Court to consolidate the Electronic Throttle Bodies action into the Fuel Injection action. For the sole purpose of implementing the settlement agreement, and subject to a reservation of all rights, DENSO will not oppose such consolidation. *See* Motion for Preliminary Approval of Settlement with DENSO Defendants, 2:13-cv-2003, ECF No. 65, n.5, n.11.

5

| Round 2 Settling Defendant | Automotive Parts Case | Round 2 Settlement Fund |
|---|---|---|
| Sumitomo Riko | Anti-Vibration Rubber Parts | $10,283,916.10 |
| | Automotive Hoses | $1,116,083.90 |
| Tokai Rika | Wire Harness Systems | $760,000.00 |
| Valeo | Air Conditioning Systems | $6,650,000.00 |
| | **TOTAL** | **$379,401,268.00** |

The Round 2 Settlement Classes are made up of 41 separate settlement classes. As part of the settlement negotiations, EPPs considered the available evidence regarding the Round 2 Settling Defendant's conduct, the estimated dollar amount of commerce affected by that conduct, and the value of the other settlement terms (such as the value of the cooperation offered by the Round 2 Settling Defendant). *See* Joint Declaration of Hollis Salzman, Steven N. Williams, and Marc M. Seltzer in Support of End-Payor Plaintiffs' Motion for Orders Granting Final Approval of the Round 2 Settlements and Approving the Plan of Allocation in Connection With the Round 2 Settlements ("Joint Decl.") ¶ 15, submitted herewith.  In the opinion of Settlement Class Counsel, the Round 2 Settlements are an excellent result for the Round 2 Settlement Classes and are fair, reasonable, and adequate. *Id.* ¶ 16.

### B.    Cooperation and Other Terms of the Round 2 Settlements

In addition to very substantial cash payments (totaling $379,401,268), the Round 2 Settling Defendants are required to provide EPPs with various forms of valuable cooperation. Those terms were described in EPPs' preliminary approval motions and are set forth at length in the written settlement agreements.[5]   In general, the Round 2 Settling Defendants agreed to provide the following cooperation: (1) producing documents and other information relevant to EPPs' ongoing claims against the Non-Settling Defendants; (2) providing attorneys' proffers; (3)

---

[5]   All relevant documents are publicly available on the Settlement website at www.autopartsclass.com.

6

making witnesses available for interviews, depositions, and trial; (4) providing assistance in understanding information provided to EPPs; and (5) facilitating the use of information at trial. With one exception, the Round 2 Settling Defendants also agreed not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts. *See, e.g.*, Settlement Agreement with Furukawa at ¶ 77, *Wire Harness*, 2:12-cv-00103, ECF. No. 517-1.[6]

In exchange for the cash payments, cooperation, and equitable relief described above, EPPs have agreed to release their claims against the Round 2 Settling Defendants and other "Releasees" (as defined in the settlement agreements). However, the Round 2 Settlements will not affect the Non-Settling Defendants' joint and several liability for the Round 2 Settling Defendants' alleged wrongdoing. That is, each of the Round 2 Settling Defendants' sales remain in their respective cases, and, where otherwise applicable, the Non-Settling Defendants remain jointly and severally liable for the damages applicable to those sales after trebling, less only the amounts paid in settlement. *See, e.g.*, Settlement Agreement with DENSO at ¶ 62, *Wire Harness*, 2:12-cv-00103, ECF No. 501-1 ("The DENSO Defendants' sales to the Settlement Classes and the DENSO Defendants' alleged illegal conduct shall remain in the Actions as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Actions or other persons or entities other than the Releasees to the extent permitted by applicable law."). Thus, the Round 2 Settlements will not limit EPPs' right to

---

[6] EPPs' settlement with Leoni does not provide for injunctive relief. However, unlike the other settlements, EPPs' settlement agreement with Leoni does not release EPPs' claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State as defined in ¶ 7 of the Settlement Agreement. *See* Settlement Agreement with Leoni at ¶ 21, *Wire Harness*, 12-cv-00103, ECF No. 509-1.

recover the full amount of their damages from the Non-Settling Defendants, against whom EPPs continue to prosecute their claims.

The Round 2 Settlements are the product of lengthy arm's-length negotiations between counsel who are experienced in prosecuting and defending complex antitrust class action cases. Joint Decl. ¶¶ 7, 9. The Round 2 Settlements were all negotiated over an extended period of time by Settlement Class Counsel and counsel for the Round 2 Settling Defendants, through multiple in-person and telephonic meetings and correspondence. *Id.* ¶ 9. A number of these negotiations were assisted by experienced mediators. *Id.* In preparation for these negotiations, Settlement Class Counsel undertook a diligent and thorough investigation of the legal and factual issues presented by this litigation. *Id.* ¶¶ 14, 15. Thus, Settlement Class Counsel were well informed as to the relevant facts and the strengths and weaknesses of EPPs' claims when the Round 2 Settlements were negotiated.

## II.    The September 2016 Notice Program Was Carried Out and Provided Adequate Notice of the Round 2 Settlements

The Round 2 Settlements provide monetary and non-monetary benefits for members of the Round 2 Settlement Classes who: (1) purchased or leased a qualifying new Vehicle[7] in the U.S. (not for resale), which contains one or more of the Settled Parts; or (2) indirectly purchased one or more of the Settled Parts as a replacement part. The monetary benefits of the Round 2 Settlements will be made available to the members of the Round 2 Settlement Classes in the following jurisdictions that allow EPPs to seek money damages or restitution: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine,

---

[7] In general, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles"). *See, e.g.*, Settlement Agreement with Sumitomo Riko Co., Ltd. and DTR Industries, Inc. at ¶ 12, *Anti-Vibrational Rubber Parts,* 2:13-cv-00803, ECF No. 137-1 ("'Vehicles' shall refer to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.").

Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

Through a preeminent class action notice consultant, Kinsella Media, LLC ("Kinsella"), EPPs implemented the September 2016 Notice Program,[8] which the Court previously approved.[9] *See Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473. Kinsella and Garden City Group ("GCG"), the Court-appointed settlement administrator, implemented each element of the September 2016 Notice Program. *See* Declaration of Shannon R. Wheatman, Ph.D., on Implementation of the September 2016 Notice Program ("Wheatman Decl.") ¶ 7, submitted herewith. The Court-approved September 2016 Notice Program included individual notice; paid media (including published notice in national publications and Internet advertising); earned media, sponsored keywords with all major search engines, and continued use of and updates to the settlement website and toll-free telephone number. *Id.* ¶¶ 11-23, 25-29. The September 2016 Notice Program was effective, reaching an estimated 80.1% of new Vehicle owners or lessees, with an average frequency of 2.5 times. *Id.* ¶¶ 24, 31, 36.

Members of the Round 2 Settlement Classes can contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com, both of which are maintained by

---

[8] Pursuant to the Court's Order granting EPPs' Motion for Authorization to Disseminate Combined Notice to the EPP Settlement Classes ("Combined Notice Order"), Kinsella previously implemented a notice program to provide notice of the Round 1 Settlements ("Combined Notice Program") to potential members of the Round 1 Settlement Classes. *See, e.g.*, Combined Notice Order, *Wire Harness,* 2:13-cv-00103, ECF No. 421.

[9] In addition to approving the September 2016 Notice Program, the Court authorized EPPs to disseminate a Claim Form to potential members of the Round 1 and Round 2 Settlement Classes. *See Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473. Potential members of the Round 1 and Round 2 Settlement Classes may submit claims electronically by completing the Claim Form online at www.AutoPartsClass.com or in paper form by downloading the form and completing and mailing it to GCG.  Castaneda Decl. ¶¶ 11, 20.

GCG. *See* Castaneda Decl. ¶¶ 11-12. The website provides answers to frequently asked questions, important deadlines, a list of the Round 2 Settling Defendants, and access to important documents, such as the long form notice and relevant Court filings. *Id* ¶¶ 10-11. The website includes a drop down menu that allows potential class members to confirm whether they are a member of any of the settlement classes by inputting their Vehicle or replacement part purchase information. *Id.* ¶ 12. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. *Id.* ¶ 10.  To date, the website has received visits from 1,100,290 unique visitors.   *Id.* ¶ 11.  GCG also sent an email notice to each of the 35,216 individuals who previously registered on the settlement website[10] and provided an email address and mailed a postcard notice to each of the 17,938 individuals who had previously registered on the settlement website but did not provide an email address. *Id.* ¶¶ 18-19.

### III.    The Reaction of Members of the Round 2 Settlement Classes Has Been Positive

The reaction of the members of the Round 2 Settlement Classes has been positive. Members of the Round 2 Settlement Classes have until March 16, 2017 to object to the Round 2 Settlements or Plan of Allocation or exclude themselves from the Round 2 Settlement Classes. As of February 8, 2017, GCG has not received any: (1) objections to or requests for exclusion from the Round 2 Settlements (*Id.* ¶¶ 21-22); or (2) objections to the Plan of Allocation. *Id.* ¶ 23.

All persons or businesses that purchased or leased one of the categories of Vehicles or replacement parts described in the Notice Programs[11] were placed on notice that they may be members of the Round 1 or Round 2 Settlement Classes, and that they should come forward,

---

[10] The email alert was deliverable to only 33,132 individuals. For all individuals for whom the email alert bounced back as undeliverable, GCG mailed them a postcard notice. Castaneda Decl. ¶ 18.

[11] The September 2016 Notice Program is referred to collectively with the Initial Notice Program and the Combined Notice Program as the ("Notice Programs").

object or exclude themselves as they see fit. No potential claimant has ever been required to identify what part was in his or her Vehicle in order to object or opt out and no objection has ever been rejected on that basis. Moreover, tens of thousands of Vehicle owners/lessees registered with GCG in response to the Initial and Combined Notice Programs. Castaneda Decl. ¶ 10.

## Legal Standard

"[T]he law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013). As a result, "the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole is fair, reasonable and adequate to all concerned." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal quotation marks and citations omitted).

After preliminary approval, notice of the proposed settlement must be given to the settlement class members, and the court must hold a hearing before granting final approval. *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The ultimate question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted). In reaching that determination, the court has broad discretion to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel regarding the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283,

297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation.").

Because a settlement represents an exercise of judgment by the negotiating parties, a court reviewing a settlement will not "substitute [its] judgment for that of the litigants and their counsel." *IUE-CWA*, 238 F.R.D. at 593 (quotations omitted). Nor will it "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Instead, courts evaluate the plaintiffs' recovery in light of the fact that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No. 05-cv-74730, 2006 U.S. Dist. LEXIS 70471, at *68 (E.D. Mich. July 13, 2006).

## Argument

### I.    The Round 2 Settlements Are Fair, Reasonable, and Adequate and Should Receive Final Approval

The Round 2 Settlements meet the criteria for final approval under Federal Rule of Civil Procedure 23. They provide meaningful benefits to the members of the Round 2 Settlement Classes, and they were reached after arm's-length negotiations between experienced counsel who had sufficient background about the merits of, and defenses to the claims asserted in the Actions. The Round 2 Settlements reflect a reasonable compromise in light of the procedural, liability, and damages questions facing both EPPs and the Round 2 Settling Defendants.

Courts in the Sixth Circuit consider the following factors when determining whether to grant final approval of a class action settlement: (1) the likelihood of success on the merits, weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and the class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent

class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 17255, at *46-47 (E.D. Mich. Feb. 22, 2011). The district court has wide discretion in assessing the weight and applicability of these factors. *Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

A.     **The Likelihood of EPPs' Success on the Merits, Weighed Against the Relief Provided by the Round 2 Settlements, Supports Final Approval**

Courts assess class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *40 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 594). "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Telectronics*, 137 F. Supp. 2d at 1013. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued to trial and judgment. *Sheick*, 2010 U.S. Dist. LEXIS 110411, at *45. In answering that question, the district court "must carefully scrutinize whether the named plaintiffs and counsel have met their fiduciary obligations to the class and whether the settlement is fair, reasonable, and adequate." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 309 (6th Cir. 2017) (internal citations omitted).

EPPs believe they will prevail in the Actions. EPPs nonetheless recognize that success at trial is not guaranteed. Although EPPs believe they can prove the existence of Defendants' illegal bid-rigging and price-fixing conspiracies, Defendants, represented by some of the leading law firms across the country, have vigorously defended these cases. Absent the Round 2 Settlements, the Round 2 Settling Defendants would oppose EPPs' motions for class

13

certification, move for summary judgment on numerous issues, and offer defenses to EPPs' claims at trial, should the Actions proceed to trial. Even if EPPs successfully established the Round 2 Settling Defendants' violations of the law, the Round 2 Setting Defendants would offer expert testimony challenging the impact of their conduct and suggesting that damages were far less than those sought by EPPs. EPPs would have to show that the Round 2 Settling Defendants' illegal overcharges were passed on through multiple levels of indirect purchasers. EPPs believe they would prevail on all of these issues at trial and appeal, but the Round 2 Settlements avoid the risks of further litigation and ensure a large recovery for members of the Round 2 Settlement Classes. Given these risks, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, the discovery cooperation that the Round 2 Settling Defendants have agreed to provide is a substantial benefit to the Round 2 Settlement Classes and "strongly militates toward approval" of the settlements. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation will enhance and strengthen EPPs' prosecution of claims against the Non-Settling Defendants. *Id.*; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *51 (noting that cooperation by the settling defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"). In addition, the agreement by all but one of the Round 2 Settling Defendants not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts provides value to the members of Round 2 Settlement Classes.[12]

---

[12] *See* footnote 6, *supra*.

14

Settlement Class Counsel believe that the Round 2 Settlements represent an excellent recovery for EPPs. Weighing the benefits of the Round 2 Settlements against the risks of continued litigation tilts the scale heavily toward final approval of the Round 2 Settlements.

> **B.      The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval**

"Settlement should represent a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Cardizem*, 218 F.R.D. at 523 (quotation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

Antitrust cases are notoriously protracted and difficult to litigate.  Given the complexity of the Actions, any final adjudicated recovery for the Round 2 Settlement Classes would almost certainly be years away.  Should EPPs' claims proceed to trial, the trial would be expensive, time-consuming, and complex, and it would involve testimony from multiple expert witnesses. Moreover, given the high stakes of this case, a favorable trial outcome would most definitely be contested on appeal.  Each subsequent step in the litigation process would require the Round 2 Settlement Classes to incur additional expenses without any assurance of a more favorable outcome than currently provided by the Round 2 Settlements.

This Court has had substantial opportunity to consider the claims and defenses raised in the *Auto Parts Litigation* and has recognized that complex antitrust litigation of this scope and magnitude has many inherent risks that can be extinguished through settlement. *See, e.g.*, Round 1 Final Approval Order at 13.  The fact that EPPs achieved exceptional recoveries to date, which eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the members of the Round 2 Settlement Classes, supports final approval of the settlements. Upon final approval, the Round 2 Settlements would bring EPPs' total recovery in this litigation

15

up to $604,069,618 million[13]—in addition to the damages remaining in each unsettled case, which remain available through the Non-Settling Defendants' joint and several liability. *See*, *e.g.*, DENSO Settlement Agreement at ¶ 62, *Wire Harness*, 2:12-cv-00103, ECF No. 501-1.

## C. The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval

"The Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the class settlement." *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *55 (quotation omitted). In a complex class action litigation such as this, the "Court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Date v. Sony Elecs., Inc.*, No. 07-cv-15474, 2013 U.S. Dist. LEXIS 108095, at *28-29 (E.D. Mich. Jul. 31, 2013) (quotation omitted); *see also Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arm's-length settlement negotiations, is appropriate.") (quotation omitted).

Settlement Class Counsel have decades of experience litigating antitrust class actions and other complex litigation. Similarly, defense counsel are some of the most experienced and skilled antitrust litigators. Joint Decl. ¶ 9. Settlement Class Counsel believe that each of the Round 2 Settlements provides an excellent result for the Round 2 Settlement Classes in light of

---

[13] In addition to the Round 1 and Round 2 Settlements, EPPs have recently secured an additional $68,985,200 in settlements with six defendant families with further additional settlements to be made public shortly. EPPs have received or moved for preliminary approval of each of these six additional settlements. EPPs will file their motion to disseminate notice and their motion for final approval of these settlements at a later date.

the circumstances of each Round 2 Settling Defendant's conduct and potential liability. *See id.* ¶¶ 16-17.

In determining whether the judgment of counsel supports final approval of the settlements, a court should consider the amount of discovery completed in the action. *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *55. There is no baseline required to satisfy this requirement; the "question is whether the parties had adequate information about their claims." *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *10 (quotation omitted). That standard is met here. Although formal discovery in each of the Actions has varied, when negotiating each of the Round 2 Settlements, Settlement Class Counsel reviewed documents produced by many Defendants, attended attorney proffers from certain cooperating Defendants, analyzed the volume of commerce affected by the particular Round 2 Settling Defendant's conduct, and analyzed information from parties and non-parties concerning impact, overcharge, and pass-through. This information allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the claims and defenses asserted in the Actions and the benefits of the Round 2 Settlements. Thus, the judgment of Settlement Class Counsel supports final approval of the Round 2 Settlements. *See Sheick*, 2010 U.S. Dist. LEXIS 110411, at *51-52.

**D.    The Reaction of Class Members Weighs in Favor of Final Approval**

The deadline for class members to object to the Round 2 Settlements or Plan of Allocation or to exclude themselves from the Round 2 Settlement Classes is March 16, 2017. *See, e.g.*, *Wire Harness*, 2:12-cv-00103, ECF No. 535. To date, the website has received visits from 1,100,290 unique visitors, the automated toll-free helpline has received 15,317 calls, and, of those 15,317 calls to the automated toll-free helpline, GCG has fielded 4,749 live calls from potential settlement class members. *Id.* ¶ 12. Yet, to date, Settlement Class Counsel have

17

received no objections to the Round 2 Settlements or Plan of Allocation, or requests for exclusion from, any of the Round 2 Settlements. Castaneda Decl. ¶¶ 21-23.

Considered as a whole, it is clear that the Round 2 Settlement Classes support the settlements achieved to date in the *Auto Parts Litigation*, including the Round 2 Settlements. The reaction from members of the Round 2 Settlement Classes supports the adequacy of the Round 2 Settlements. *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class members); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).  To the extent any objections are received after the filing of this motion, Settlement Class Counsel will address those objections separately for the Court.

### E.    The Round 2 Settlements Are Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quotation omitted). The private enforcement of the antitrust laws is facilitated by the Round 2 Settlements, which will pay hundreds of millions of dollars to consumers and other end-payors.

F.     **The Round 2 Settlements Are the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel**

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *58. The Round 2 Settlements here were reached after adversarial litigation and often contentious discovery. The negotiations leading to the Round 2 Settlements were conducted entirely at arm's length, in some instances before a neutral mediator, and often took many months of hard bargaining to arrive at agreements. *See* Joint Decl. ¶¶ 7, 9.  The Round 2 Settlements were negotiated in good faith, with counsel on each side zealously representing the interests of their clients.

II.     **Notice of the Round 2 Settlements Satisfied the Requirements of Rule 23(e) and Due Process**

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *UAW*, 497 F.3d at 629.  The "best notice practicable" standard does not require actual notice, nor does it require direct notice when class members' individual addresses are not readily available or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Manual for Complex Litigation (Fourth) § 21.311, at 288 (2004). The mechanics of the notice process "are left to the discretion of the court subject only to the

broad 'reasonableness' standards imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

The September 2016 Notice Program was multi-faceted and utilized multiple means of communication. The September 2016 Notice Program used both paid and earned media. Wheatman Decl. ¶¶ 12-23, 25.  It included the following elements: (1) individual notice; (2) extensive published notice in several national publications; (3) online media efforts through targeted and Internet advertising on various websites, social media sites, and search engines; (4) earned media efforts through a multimedia news release, state press releases, and media outreach; and (5) a dedicated settlement website. *See id.* ¶¶ 11-23, 25-29. This notice program easily satisfied the requirements of Rule 23 and due process. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *66; *Sheick*, 2010 U.S. Dist. LEXIS 110411, at *31.

In terms of content, the class notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quotation omitted). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting; and (7) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

That standard is met here. The Court previously approved the September 2016 Notice Program, which is substantially similar to the notice program implemented in connection with the Round 1 Settlements. *See* Round 1 Final Approval Order at 21 ("The Court finds that the [Round 1] Notice satisfied Rule 23(e)(1), in that it informed the class members of the nature of

the pending actions, the terms of the settlement, and how to proceed to get more information.");

*Wire Harness*, 2:12-cv-00103, ECF No. 535 (approving substantially similar notice of Round 2

Settlements).  The September 2016 Notice Program contained both a short and long form notice

(together, "Notices").   The Notices were written in simple, plain language to encourage

readership and comprehension, and no important information was omitted or missing. *See*

Wheatman Decl. ¶¶ 32-34. The Notices provided substantial information, including background

on the issues in the case, a description of the Plan of Allocation, and specific instructions for

members of the Round 2 Settlement Classes to follow to properly exercise their rights, such as

their right to opt out or to object to the Round 2 Settlements or Plan of Allocation. *Id.*

## III.    The CAFA Notice Requirement Has Been Satisfied by Each of the Round 2 Settling Defendants

The Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"), requires settling

defendants to serve notice of a proposed settlement on the appropriate state and federal officials

after a proposed class action settlement is filed with the court. 28 U.S.C. § 1715(b). Each of the

Round 2 Settling Defendants has provided Settlement Class Counsel with written notice that it

has satisfied the CAFA notice requirement. Joint Decl. ¶ 20.

## IV.    The Court Should Certify the Round 2 Settlement Classes

In its preliminary approval orders, the Court found that Rule 23's requirements were met

and provisionally certified each of the Round 2 Settlement Classes.  It is well-established that a

class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591 (1997).  The settlement class must meet the requirements of Rule 23(a) and at least one

subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722

F.3d 838, 850-51 (6th Cir. 2013).  Previously, the Court gave final approval and certified the

substantially similar settlement classes relating to the Round 1 Settlements. *See, e.g.*, Round 1 Final Approval Order.  The Court should reach the same result here.

### A.    The Round 2 Settlement Classes Satisfy Rule 23(a)

Rule 23(a) is satisfied if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *16-17.  The Round 2 Settlement Classes met all of the requirements of Rule 23(a).

### 1.    Numerosity

To establish numerosity, a class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). Courts in the Sixth Circuit have recognized that "more than several hundred" class members can satisfy numerosity based simply on the number of potential litigants.   *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Here, there are many tens of thousands of members of the Round 2 Settlement Classes, including persons and entities, geographically distributed throughout the United States. Thus, joinder would be impracticable, and numerosity is easily present in the Actions.

### 2.    Commonality

Commonality requires only "one issue whose resolution will advance the litigation by affecting a significant number of the proposed class." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404 (S.D. Ohio 2007). "Price-fixing conspiracy cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged

conspiracy." *Id.* at 405; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("Where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.") (internal citation omitted).

The following common questions of law and fact are present in these cases: (1) whether Defendants engaged in a conspiracy to rig bids, fix prices, or allocate the markets for the Settled Parts incorporated into Vehicles sold in the United States; (2) the duration of such illegal contracts, combinations, or conspiracies; (3) whether Defendants' conduct resulted in unlawful overcharges on the prices of the Settled Parts; and (4) whether such unlawful overcharges were passed on to EPPs. Under settled case law, any one of these issues would suffice to establish commonality. *See, e.g.*, *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). Accordingly, the commonality element is satisfied here.

### 3. Typicality

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants." *Foundry Resins*, 242 F.R.D. at 405. In these cases, EPPs and the absent class members are all alleged victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for the Settled Parts. The same evidence will prove Defendants' liability, and whether Defendants' conduct resulted in unlawful overcharges to

EPPs. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 (holding that "even if there are factual distinctions among named and absent class members," typicality is met when "all Class Members' claims arise from the same course of conduct, *i.e.* a conspiracy to allocate markets in violation of the Sherman Act").

### 4. Adequacy

Finally, the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the class representatives to "have common interests with unnamed members of the class" and to "vigorously prosecute the interests of the class through qualified counsel." *Foundry Resins*, 242 F.R.D. at 407.

There are no conflicts between EPP class representatives and the members of the Round 2 Settlement Classes because they all have the same interest in establishing liability as a result of their purchases or leases of Vehicles or purchases of replacement parts. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *41 ("Plaintiffs' interests are aligned with the Class Members because they all possess the same interests and have suffered the same type of injury and the class is represented by competent and experienced Class Counsel."). EPP class representatives and the members of the Round 2 Settlement Classes also share a common interest in obtaining the Round 2 Settling Defendants' cooperation in prosecuting the claims against the Non-Settling Defendants, as well as the injunctive relief obtained from virtually all of the Round 2 Settling Defendants.

Courts also must examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class under Federal Rule of Civil Procedure 23(g). *Foundry Resins*, 242 F.R.D. at 407. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously

24

prosecuted the claims of the Round 2 Settlement Classes, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation.").   The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel on behalf of EPPs in all actions coordinated as part of the *Auto Parts Litigation*. Leadership Orders, *Auto Parts Master Docket*, 2:12-md-02311, ECF Nos. 65, 271. The Court also appointed these same firms as Settlement Class Counsel in each of the orders preliminarily approving the Settlement Agreements (s*ee, e.g.*, Order Granting Preliminary Approval of Settlement with DENSO at ¶ 7, *Wire Harness*, 2:12-cv-00103, ECF No. 534), and appointed them as Settlement Class Counsel in its order granting final approval of the Round 1 Settlements. *See, e.g.*, Round 1 Final Approval Order at 26.  For the same reasons, the Court should confirm their appointment as Settlement Class Counsel here.

### B.    The Round 2 Settlement Classes Satisfy Rule 23(b)(3)

In addition to the requirements of Rule 23(a) discussed above, common questions must predominate over questions affecting only individual class members, and a class action must be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

#### 1.    Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). But

plaintiffs need not "prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, predominance is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *Foundry Resins*, 242 F.R.D. at 408.

Common questions must predominate, but they do not have to be dispositive of the litigation. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 535 (E.D. Mich. 2013) (quotation omitted). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013).

Horizontal price-fixing cases are particularly well suited for class certification because proof of the conspiracy presents a common, predominating question. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[P]roof of the *conspiracy* is a common question thought to predominate over the other issues of the case."); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43 ("The allegations of market and customer allocation will not vary among the class members and issues regarding the amount of damages do not destroy predominance."). This is true even if there are individual state law issues, as long as the common issues still outweigh the individual issues—that is, if a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class action may obtain certification under Rule 23(b)(3)

when liability questions common to the class predominate over damages questions unique to class members.") (internal quotation marks and citations omitted); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, the fact that damages calculation may involve individualized issues does not defeat predominance).

Here, the same sets of core operative facts and theories of liability apply to all the Round 2 Settlement Classes' claims.  Whether the Settling Defendants entered into illegal agreements to artificially fix prices of the Settled Parts is a question common to all members of the Round 2 Settlement Classes because it is an essential element of proving an antitrust violation.  Common questions also include whether, if such an agreement was reached, the Round 2 Settling Defendants violated the antitrust laws, and whether their acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40.  If EPPs and the absent class members brought individual actions, they would each have to prove the same claims in order to establish liability. For settlement purposes, common issues predominate here.

### 2.    Superiority

In determining whether a class action is the superior method to employ, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Foundry Resins*, 242 F.R.D. at 411.

The *Auto Parts Litigation* has been centralized in this Court. To date, no members of the Round 2 Settlement Classes have requested exclusion from the Round 2 Settlements.  Thus, consideration of the factors listed in subsections (A), (B), and (C) demonstrates the superiority of

27

the Settlement Classes. The last factor, meanwhile, is irrelevant because the potential difficulties in managing a trial are extinguished by the fact of settlement. *Amchem*, 521 U.S. at 620.

In addition, the scope and complexity of the *Auto Parts Litigation* —and as a result, the cost to litigate these claims—is enormous. The Round 2 Settlement Classes are largely comprised of individual consumers who purchased or leased a new Vehicle or purchased a replacement part, none of whom could rationally be expected to spend the millions of dollars necessary to pursue their claims resulting from the unlawful overcharges. *See Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wis. 2000) ("Given the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."). Even if class members could afford individual litigation, however, that leaves the alternatives to the Settlement Classes as a multiplicity of separate lawsuits at high cost to the judicial system and private litigants, or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). Thus, certification of the Settlement Classes is superior to the alternatives in this litigation.

## V.   The Court Should Approve the Plan of Allocation in Connection With the Round 2 Settlements

On October 11, 2016, the Court granted EPPs' Amended Motion for Approval of Plan of Allocation "to distribute all settlement funds as to which the Court has granted final approval," and "direct[ed] the EPPs to give notice of the Plan of Allocation to the Settlement Classes." *Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473.   Although at the time the Court granted EPPs' motion, only the Round 1 Settlements had been finally approved, EPPs subsequently provided Court-approved notice about the same Plan of Allocation to both the

Round 1 and Round 2 Settlement Classes. Castaneda Decl. ¶¶ 11, 17. Therefore, both the Round 1 and Round 2 Settlement Classes have had the opportunity to review, comment, and/or object to the Plan of Allocation.  To date, no members of either the Round 1 or Round 2 Settlement Classes have objected to the Plan of Allocation. *Id.* ¶ 23.  Since EPPs' Plan of Allocation is identical for both the Round 1 and Round 2 Settlements, EPPs request that the Court approve the Plan of Allocation in connection with the Round 2 Settlements.

**Conclusion**

For the foregoing reasons, EPPs respectfully request that the Court: (1) grant final approval of the Round 2 Settlements; (2) grant final certification of the Round 2 Settlement Classes for settlement purposes only; (3) confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 2 Settlements; and (4) approve the Plan of Allocation in connection with the Round 2 Settlements.

Dated: February 9, 2017                   Respectfully submitted,

                                          */s/ Hollis Salzman*
                                          Hollis Salzman
                                          Bernard Persky
                                          William V. Reiss
                                          David Kurlander
                                          **ROBINS KAPLAN LLP**
                                          601 Lexington Avenue, Suite 3400
                                          New York, NY 10022
                                          Telephone: (212) 980-7400
                                          Facsimile: (212) 980-7499
                                          hsalzman@robinskaplan.com
                                          bpersky@robinskaplan.com
                                          wreiss@robinskaplan.com
                                          dkurlander@robinskaplan.com

*/s/ Steven N. Williams*
Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiffs Classes*

/s/ E. Powell Miller
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-
Payor Plaintiffs Classes*

31

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller