# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| IN RE: AUTOMOTIVE PARTS ANTITRUST | : | Master File No. 12-md-02311 |
| LITIGATION | : | Honorable Marianne O. Battani |
| | : | |
| | : | |
| In Re: Wire Harness | : | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Bearings | : | 2:12-cv-00503 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | : | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generator | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Electronic Powered Steering Assemblies | : | 2:13-cv-01903 |
| In Re: Fan Motors | : | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | 2:13-cv-02803 |
| In Re: Spark Plugs | : | 2:15-cv-03003 |
| In Re: Automotive Hoses | : | 2:15-cv-03203 |
| In Re: Ceramic Substrates | : | 2:16-cv-03803 |
| In Re: Power Window Switches | : | 2:16-cv-03903 |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| End-Payor Actions | : | |

## ORDER GRANTING FINAL APPROVAL TO THE ROUND 2 SETTLEMENTS

Before the Court are End-Payor Plaintiffs' ("EPPs") motions for final approval of settlements with certain defendants described below. Pursuant to notice given to the Settlement Classes in accordance with the Court's orders, a hearing was held on EPPs' motions on April 19, 2017, and at the conclusion of the hearing, the Court granted EPPs' motions. For the reasons stated at the hearing and as provided in this Order, the Court finds the settlements provide an excellent result for each of the Settlement Classes given the substantial risks of litigation and that each of the settlements is fair, reasonable and adequate to the respective Settlement Classes. Although described collectively in this Order for purposes of administrative convenience, each settlement is independent of the others and this Order applies to each of the separate settlements.

## I.     BACKGROUND

These actions arise from alleged conspiracies among the automotive industry's largest manufacturers, marketers, and sellers of numerous component parts to fix the prices, rig bids, and allocate the markets and customers in the United States for their products.  EPPs assert claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various state antitrust, unjust enrichment, and consumer protection laws.

The Court preliminarily approved each of the settlements (referred to herein as the "Round 2 Settlements") in separate orders of the Court. The Round 2 Settlements were made with twelve defendants and their affiliates (collectively, "Settling Defendants") involving twenty-nine automotive parts (the "Settled Parts").  The Settling Defendants are: (1) Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC (collectively, "Aisin Seiki"); (2) DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO Automotive Deutschland GmbH, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., and ASMO Manufacturing, Inc. (collectively, "DENSO"); (3) Furukawa Electric Co., Ltd. and American Furukawa, Inc. (collectively, "Furukawa"); (4) G.S. Electech, Inc., G.S. Wiring Systems Inc.,

1

and G.S.W. Manufacturing, Inc. (collectively, "G.S. Electech"); (5) LEONI Wiring Systems, Inc. and Leonische Holding Inc. (collectively, "LEONI"); (6) Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "MELCO"); (7) NSK Ltd., NSK Americas, Inc., NSK Steering Systems Co., Ltd., and NSK Steering Systems America, Inc. (collectively, "NSK"); (8) Omron Automotive Electronics Co. Ltd. ("Omron"); (9) Schaeffler Group USA Inc. ("Schaeffler"); (10) Sumitomo Riko Co. Ltd. and DTR Industries, Inc. (collectively, "Sumitomo Riko"); (11) Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika")[1]; and (12) Valeo Japan Co., Ltd., on behalf of itself and Valeo Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp (collectively, "Valeo") (collectively, "Round 2 Settling Defendants").

These settlements collectively make available nearly $379.5 million in cash for the benefit of the Settlement Classes. Those classes are comprised of persons and entities who, for the last ten or more years depending on the terms of the respective Settlement Agreements, purchased or leased a new vehicle[2] in the United States not for resale that included at least one of the Settled Parts, or indirectly purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a Defendant, any current or former parent, subsidiary, or affiliate of a Defendant or any co-conspirator of a Defendant. Further, the Round 2 Settling Defendants must provide significant cooperation to the EPPs in the continued prosecution of EPPs' claims against the non-settling defendants. The settlements also provide that, with one exception, the Round 2 Settling Defendants will not engage in certain specified conduct that would violate the antitrust laws involving the automotive parts that are at issue in these lawsuits

---

[1] Tokai Rika has settled with EPPs in the Wire Harness Systems action, but remains a defendant in other parts cases.

[2] In general, vehicles in question include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles"). *See, e.g.*, Settlement Agreement with Sumitomo Riko Co., Ltd. and DTR Industries, Inc. at ¶ 12, *Anti-Vibrational Rubber Parts,* 2:13-cv-00803, ECF No. 137-1 ("'Vehicles' shall refer to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.").

for a period of two years.

### A.    Settlement Amounts

The following chart summarizes the Round 2 Settlements, and identifies the respective

Round 2 Settling Defendants, Settled Parts, and settlement amounts.

| End-Payor Plaintiffs' Settlement Funds | | |
|---|---|---|
| Round 2 Settling Defendant | Automotive Parts Case | Settlement Fund |
| Aisin Seiki | Valve Timing Control Devices | $18,620,000.00 |
| DENSO | Air Conditioning Systems | $21,836,133.00 |
| | Alternators | $50,449,261.00 |
| | ATF Warmers | $1,662,943.00 |
| | Automotive Wire Harness Systems | $14,531,801.00 |
| | Ceramic Substrates | $1,531,138.00 |
| | Fan Motors | $142,120.00 |
| | Fuel Injection Systems | $19,392,650.00 |
| | Fuel Senders | $187,823.00 |
| | Heater Control Panels | $14,676,679.00 |
| | HID Ballasts | $1,424,803.00 |
| | Ignition Coils | $16,746,824.00 |
| | Instrument Panel Clusters | $7,525,762.00 |
| | Inverters | $142,120.00 |
| | Motor Generators | $142,120.00 |
| | Power Window Motors | $142,120.00 |
| | Radiators | $15,760,989.00 |
| | Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors | $9,760,366.00 |
| | Starters | $9,709,228.00 |
| | Valve Timing Control Devices | $4,362,039.00 |
| | Windshield Washer Systems | $362,978.00 |
| | Windshield Wiper Systems | $3,310,103.00 |
| Furukawa | Automotive Wire Harness Systems | $42,560,000.00 |
| G.S. Electech | Automotive Wire Harness Systems | $3,040,000.00 |
| LEONI | Automotive Wire Harness Systems | $1,482,000.00 |
| MELCO | Alternators | $17,129,946.08 |
| | Automotive Wire Harness Systems | $3,211,463.34 |
| | Electronic Powered Steering Assemblies | $3,211,463.34 |
| | Fuel Injection Systems | $3,211,463.34 |
| | HID Ballasts | $3,211,463.34 |
| | Ignition Coils | $14,567,197.98 |
| | Starters | $16,474,807.24 |
| | Valve Timing Control Devices | $3,211,463.34 |
| NSK | Automotive Bearings | $22,420,000.00 |
| | Electronic Powered Steering Assemblies | $3,800,000.00 |
| Omron | Power Window Switches | $3,040,000.00 |
| Schaeffler | Automotive Bearings | $7,600,000.00 |
| Sumitomo Riko | Anti-Vibrational Rubber Parts | $10,283,916.10 |
| | Automotive Hoses | $1,116,083.90 |
| Tokai Rika | Automotive Wire Harness Systems | $760,000.00 |
| Valeo | Air Conditioning Systems | $6,650,000.00 |
| | TOTAL | $379,401,268.00 |

As part of the settlement negotiations, EPPs considered several factors, including the evidence regarding Settling Defendants' alleged conduct and the estimated dollar amount of commerce affected by that conduct, including the volume of commerce data used in calculating the amount of criminal fines imposed on certain of the defendants, and information from parties and non-parties, and their consulting experts, concerning impact, overcharge, and pass-through, as well as their knowledge about potential recoveries that might be available in this litigation obtained through many years of experience in litigating and settling antitrust class actions. EPPs also considered the value of the other settlement terms, especially the value of discovery cooperation offered by Settling Defendants.

### B.     Cooperation and Other Terms

Under the terms of the settlements, the Settling Defendants must provide cooperation to the EPPs. Specifically, they must (1) produce documents and data relevant to the ongoing claims of EPPs against the non-settling defendants, if they have not already done so; (2) provide attorney proffers; (3) make witnesses available for interviews, depositions, and trial; (4) provide assistance in understanding certain data and other information produced to EPPs; and (5) facilitate the use of the data and information at trial. Further, with one exception, all of the Round 2 Settling Defendants have agreed not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts.

In exchange for the settlement payments and cooperation, EPPs will release the "Released Claims" against the Round 2 Settling Defendants.  The Settlement Agreements will not affect other current or future defendants' joint and several liability for the Round 2 Settling Defendants' alleged wrongdoing. Round 2 Settling Defendants' sales remain in their respective cases. Non-settling defendants, with the exception of those that are ultimately determined to be entitled to the reduced liability provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. No. 108–237, 118 Stat. 237, 661, 665 (2004), as

amended, remain jointly and severally liable for treble damages applicable to the sales of all of the co-conspirators, less only the amounts paid in settlement. Consequently, the Settlement Agreements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from any non-settling defendants remaining in particular cases against whom EPPs continue to prosecute their claims.

### C.     Notice Plan

In these cases, the Round 2 Settlements provide substantial cash benefits to consumers and other class members, who purchased or leased new vehicles, not for resale, containing the automotive parts subject to the settlements, or who indirectly purchased one or more of those automotive parts as a replacement part.  The Round 2 Settlements identify those jurisdictions that allow EPPs, which are indirect purchasers, to seek money damages or restitution; namely, Arizona, Arkansas, California, District  of Columbia, Florida, Hawaii, Iowa, Kansas,  Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "EPP States").

EPPs, through EPPs' class action notice expert consultant, Kinsella Media, LLC ("Kinsella"), implemented a class-notice program utilizing paid and earned media. *See, e.g.*, Declaration of Shannon R. Wheatman, Ph.D., on Implementation of the September 2016 Notice Program ("Wheatman Decl."), 12-cv-00103, ECF No. 560. Notice was published in *Field & Stream*, *ESPN The Magazine*, *People*, *Reader's Digest*, *Southern Living*, *Woman's Day*, *The Wall Street Journal*, *Auto Rental News*, *Automotive Fleet*, *Reuters*, *NBC Money*, *Consumer Reports,* and *Automotive Weekly*, and online media efforts through banner advertisements on outlets like Facebook and Yahoo!. *Id.* The banner advertisements, which ran until January 10, 2017, have been seen a total estimated 354,593,140 times. *Id.* The earned media component of

this notice program included a multimedia news release distributed on PR Newswire's US1 National Circuit on November 29, 2016. *Id.* As of February 9, 2017, the release was republished across 171 news websites and received over 11,415 views. *Id.* A total of 248 journalists engaged with the multimedia news release, and major national outlets that covered the Settlements, include:  Reuters, Associated Press, Boston Globe, Chicago Tribune, The Today Show, NBC Money, Consumer Reports, and Automotive Weekly. *Id.* Other earned media efforts, which continued through April 19, 2017, included statewide press releases in the EPP States as well as outreach to 275 national and local reporters for print and television. *Id.*  Kinsella also registered sponsored keywords and phrases (e.g., "Auto Parts Settlement") with all major search engines, including Google AdWords, Bing Microsoft Advertising, and their search partners. *Id.*

Members of the Settlement Classes are able to contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com. *Id.* The website provides answers to frequently asked questions, deadlines, a list of the Settling Defendants, court filings, as well as the long form notice. *Id.* The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. *Id.*

## II.       STANDARD OF REVIEW

Federal Rule 23(e) of Civil Procedure governs class action settlements, and under the rule, "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Moreover, when a proposed settlement binds class members, "the court may approve it only after a hearing and on a finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23 (e)(2); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also In re Packaged Ice Antitrust Litig*, No. 08-MD–1952, 2011 WL 717519, at *8 (E. D. Mich. Feb. 22, 2011).

Approval involves a three-step process: "(1) the court must preliminarily approve the

proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). In the third step, the court assesses whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick*, 2010 WL 4136958, at *14-15.

In exercising its discretion, the court gives deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014). Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Because the purpose of settlement is to avoid the determination of contested issues, the approval process is not simply an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). A court considering whether to approve a settlement should be mindful that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric.*

*Implement Workers of Am. v. Ford Motor Co.*, No. 0574730, 2006 WL 1984363, at *23 (E.D.

Mich. July 13, 2006) (citation omitted).

## III.    ANALYSIS

At the outset, the Court observes that courts within the Sixth Circuit "have recognized

that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No.

2:10cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice*

*Antitrust Litig.*, No. 08- MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v.*

*General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of

class actions).  "Given that class settlements are favored, the role of the district court is limited

to the extent necessary to reach a reasoned judgment that the agreement is not the product of

fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement

taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA v. Gen. Motors*

*Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal quotation marks and citations omitted).

### A.    Factors Governing Final Approval

The Round 2 Settlements meet the criteria required for final approval under Rule 23.

They provide meaningful benefits and were reached as a result of arms'-length negotiations

conducted in good faith by experienced counsel for plaintiffs and defendants, who were

knowledgeable about plaintiffs' claims and the defenses that might be asserted to those claims.

The settlements reflect a reasonable compromise in light of the liability, damages, and

uncertainties of continued litigation facing both EPPs and Settling Defendants.

Here, the Court has considered a number of factors in reaching its conclusion that the

settlements should be granted final approval:  (1) the likelihood of success on the merits weighed

against the amount and form of the relief offered in the settlement; (2) the complexity, expense,

and likely duration of further litigation; (3) the opinions of class counsel and class

representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent

8

class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice*, 2011 WL 717519, at *8. No one factor is determinative; each is discussed below.

### 1. Likelihood of Success on the Merits

The court assesses class action settlements "with regard to a 'range of reasonableness,' an assessment that 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Int'l Union*, 2006 WL 1984363, at *21. When the interests of the class as a whole are better served by settlement, the standard is met. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

Even though many of the Settling Defendants pled guilty in criminal proceedings brought by the United States Department of Justice ("DOJ") to the very conduct alleged by EPPs in their complaints, EPPs' ultimate success is far from assured. EPPs must prove several critical issues unique to their actions that the DOJ did not, including (1) the amount of any overcharges resulting from the alleged conspiracies, (2) the nature and impact of the economic and business relationships between parties occupying different places in the chain of distribution and the relationship of defendants' sales to original equipment manufacturers ("OEMs"), OEMs' sales to auto dealers, and dealers' automobile sales to end-users, (3) measuring and tracing the pass-through of overcharges, and (4) class-wide impact and the standing to sue of indirect purchasers. The resolution of these issues will turn in large measure on a battle of experts–at great cost, and at great risk to the class members' chances of success. EPPs must show they suffered damages as a result of the defendants' conduct, and given the nature of the automobile industry, the damages methodologies advanced by the parties are expected to vary greatly.

In addition, EPPs' cases are also significantly broader than the government's cases, including claims against some defendants that did not plead guilty and involving time periods that were not part of the indictments or guilty pleas that resulted from the government's

investigation. In sum, EPPs face significant challenges to proving class-wide impact and the amount of damages they sustained. The Round 2 Settling Defendants have vigorously and ably defended these cases and will continue to do so in the event the Court were to reject the settlements. These settlements avoid the many risks of further litigation and ensure recovery for members of the Settlement Classes.

Of great importance in the Court's assessment of the benefits to the respective Settlement Classes of the Round 2 Settlements is the provision in the settlements requiring discovery cooperation of the Round 2 Settling Defendants.  The cooperation agreed to includes, for example, identification of all current and former employees, directors, and officers interviewed by government entities investigating antitrust activity in the industry, document production, including English translations, regarding the investigations, not only by the Department of Justice, but by government entities in other countries, production of information and documents concerning pricing, employee training on bidding and pricing, production of transactional data regarding sales to OEMs, bids, attorney proffers, witness interviews, depositions, and trial testimony. *See, e.g.*, Doc. No. 354 in 12-102. This benefit to the settlement classes "strongly militates toward approval" of the settlements. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). Those cooperation provisions strengthen EPPs' ability to prosecute their claims against those defendants that continue to litigate these cases. *Id.* Finally, with one exception, the Round 2 Settling Defendants have agreed not to engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue.

Therefore, the Court finds that after weighing the benefits of the settlements against the risks of continued litigation, the scale tilts heavily toward final approval.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation

A settlement "should represent 'a compromise which has been reached after the risks,

expense and delay of further litigation have been assessed.'" *In re Cardizem*, 218 F.R.D. at 523 (quotation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

The Court agrees with EPPs' counsel's assessment that antitrust class actions of the size and the magnitude of this very complicated litigation make this among the most difficult and complex actions to prosecute. EPPs' counsel represent nearly sixty class representatives, pursuing claims under federal law and the laws of thirty states and the District of Columbia on behalf of classes of consumers and businesses that purchased or leased new vehicles containing certain automotive parts. Given the well-known difficulty and protracted nature of antitrust cases in general, the Court finds that any final adjudicated recovery for the EPPs would almost certainly be many years away. Further, continued litigation would be expensive, time consuming, complex, and likely involve testimony from multiple expert witnesses. The Court is cognizant that even if EPPs achieve favorable trial outcomes, appeal is likely. Furthermore, each subsequent step in the litigation process would require EPPs to incur substantial additional expense without any assurances of a more favorable outcome than achieved by these settlements.

The Court itself has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope and magnitude has many inherent risks that settlements eliminate. Here, EPPs have negotiated substantial recoveries that eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the Settlement Classes. An analysis of this factor, therefore, overwhelmingly supports final approval of the settlements.

### 3. Judgment of Experienced Counsel

In deciding whether a proposed settlement warrants approval, the Court considers "the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008).

11

Counsels' judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18).

In this case, the settlements were reached by experienced counsel, with decades of experience, after arm's-length negotiations. EPPs' counsel have stated that they believe that the settlements each provide an excellent result for the respective Settlement Classes given the circumstances of each Settling Defendant's conduct and potential liability.

EPPs' counsel investigated the legal and factual issues and discovery has been ongoing. (*See* Joint Declaration of Hollis Salzman, Steven N. Williams and Marc M. Seltzer at ¶ 9-13). (e.g., 12-cv-00103, ECF No. 559.)  The information revealed in the discovery process is useful to all the subsequently filed cases, and the facts of these cases, and, especially, the strength and weaknesses of the claims asserted by EPPs are well known.  *See Sheick*, 2010 WL 4136958, at *19.  The Court finds that the judgment of experienced counsel supports final approval of the Settlements.

### 4.    Discovery

Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[F]ormal discovery [is not] a necessary ticket to the bargaining table."). The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225  F.R.D. 436, 458 (S.D.N.Y. 2004)).

Progress in discovery varies in each case. In some cases, such as Automotive Wire Harness Systems, discovery is complete. In all cases, however, EPPs' counsel had access to public documents, such as the guilty pleas of certain defendants, which in many instances set

forth dollar volume of commerce data used in calculating the amount of criminal fines imposed, documents produced to the DOJ, and proffers of information by cooperating defendants. The Court is satisfied that they had sufficient information to reach these settlements.

### 5.    Reaction of Absent Class Members

The deadline for class members to exclude themselves from the proposed Settlement Classes passed with only two requests for exclusion. By March 16, 2017, the deadline for the Court to receive objections, the Court had received objections from Olen York, Amy York, and Nancy York, who are represented by George W. Cochran (collectively the "York Objectors"); Mary Ray and Sean Hull, who are represented by Christopher A. Bandas (collectively the "Ray/Hull Objectors"); Benjamin Feury, who is represented by Marla A. Linderman; Patrick S. Sweeney, and Sandra Singer. Before addressing the merits of the objections, the Court directs its attention to some preliminary matters.

### a.    Preliminary Matters

First, the Court considers EPPs' motion to strike untimely objections filed by the Ray/Hull Objectors. *See, e.g.*, *Wire Harness*, 2:12-cv-00103, ECF No. 572. The Court set March 16, 2017, as the date on which the Court and the Claims Administrator must *receive* objections to the Round 2 Settlements. *See, e.g.*, *Wire Harness*, 2:12-cv-00103, ECF No. 535 ¶ 11. In violation of this deadline, the Ray/Hull Objectors (through their attorney, Christopher A. Bandas) submitted objections for filing in twenty-seven cases on April 4, 2017. These submissions were nearly three weeks late. The Ray/Hull Objectors had also timely filed a single objection only in the Master Case Docket of the *Auto Parts Antitrust Litigation*. *See* Objection of Mark Ray and Sean Hull, 12-cv-02311, ECF No. 1717 (Mar. 16, 2017).

The Court "has the inherent authority and discretion to strike filings and materials that do not comply with the Court's rules." *DuBose v. Kasich*, No. 2:11-CV-00071, 2013 WL 164506, at *2 (S.D. Ohio Jan. 15, 2013). Courts routinely strike objections to class action settlements that

13

are filed after the objection deadline. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331, at *1 n.1 (N.D. Cal. Mar. 20, 2017) (striking as untimely an objection to a class action settlement filed after the deadline); *In re Beacon Assocs. Litig.*, No. 09 CIV. 3907 CM, 2013 WL 2450960, at *19 (S.D.N.Y. May 9, 2013) (overruling objection to a class action settlement "as untimely and grant[ing] the motion to strike it" where the objection was filed after the deadline). The Ray/Hull objection was timely filed in the Master Case Docket; however, the Court strikes each of the Ray/Hull Objectors' filings made in the individual cases on April 4, 2016, as untimely. Their objection is thus ineffective as to any of the individual settlements. Nonetheless, the Court will address the Ray/Hull Objectors' objection.

Similarly, Sandra Singer faxed a document to the Court the morning of the April 19, 2017 Hearing titled as an emergency motion for leave to file a late reply. The Court does not accept faxed documents for filing, and in any case, Ms. Singer's document contained no indication that any late filed reply would contain any new arguments or information. The Court therefore will not consider Ms. Singer's faxed document.

### b.    Merits

#### i.    Information available to potential class members

Objectors contend that Settlement Class members were deprived of important information in various ways.

Objectors Ray and Hull, along with Feury, argue that class members have not been informed of the potential value of their claims and cite *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 303 (6th Cir. 2016), in support. *Shane Group*, however, is distinguishable because there the Sixth Circuit took issue with the plaintiffs' failure to make available an expert's report on damages that provided a "valuation of the class's claims" and "by all accounts was the keystone of the settlement agreement." *Id.* at 306. Here, EPPs' Class Counsel have not yet obtained an expert damages report because none of the cases at issue in the

Round 2 Settlements are at the point where expert reports have been prepared and exchanged.

More importantly, *Shane Group* does not stand for the proposition that class members, prior to court-approval of a class settlement, must have access to a damages model that estimates the value of claims. A damages model is not needed to approve a class action settlement. In fact, "formal discovery [is not] a necessary ticket to the bargaining table." *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211; *see also Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1240 (9th Cir. 1998). And the Court is not "required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).

Class Counsel have explained that in reaching agreement on each of the settlements they considered information available about the Settling Defendants' conduct, financial information, the dollar volume of affected commerce, the fines that those defendants who pleaded guilty paid to the government, the discovery cooperation given and to be given by the Settling Defendants, and their knowledge of the potential value of antitrust claims gained from many years of litigating antitrust class actions. The criminal fines paid by certain of these defendants are a matter of public record.  Under the United States Sentencing Guidelines those fines are calculated in the first instance based on 20% of the commerce affected by the Settling Defendants' collusive activities.

Objectors also assert they do not have access to evidence and volume of commerce information and, therefore, cannot evaluate the value of their claims. But there is voluminous publicly available information about the Round 2 Settling Defendants and their conduct. In *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 161-62 (S.D. Ohio 1992), a court in this circuit determined that publicly available documents gave class counsel and objectors alike an adequate basis to determine whether a settlement was fair and reasonable. Here, information about the

15

alleged conduct is publicly available in court filings, the class settlement website, and reports in the media. For example, much volume of commerce data is publicly available in the related criminal proceedings regarding those Round 2 Settling Defendants that have pleaded guilty. *See, e.g., United States v. DENSO Corp.*, No. 2:12-cr-20063 (E.D. Mich. 2012), ECF No. 9 (noting dollar amounts of sales of products).

To the extent Objectors complain that important information is under seal, they do not point to any specific information filed under seal that they believe is necessary to evaluate their claims. Even before the *Shane Group* decision, which recently clarified document sealing standards in the Sixth Circuit, EPPs' counsel filed documents under seal sparingly, and always concurrently filed a publicly available redacted version of the documents. None of the Objectors specify any particular redactions as problematic or inhibiting them from understanding the claims asserted in this litigation or any other information that might reflect on the fairness of the settlements. Since the *Shane Group* decision, the parties in *In re Auto Parts Antitrust Litigation* have developed, and the Court has approved, a protocol predicated on complying with the document-sealing standards laid out in *Shane Group*. *See* Stip. Order Regarding Sealed Filings, 12-md-2311, ECF No. 1690. Pursuant to the protocol, dozens of previously sealed documents are no longer sealed. The Objectors' sealing argument lacks merit.

Finally, Ms. Singer speculates that in order to submit a claim to share in the settlement funds she may be required to pay to obtain documentation from the registrar of motor vehicles to verify her vehicle purchases, and the cost to do so may be more than what she would receive as a class member. Singer's objection is not a proper basis to deny final approval of the settlements. In any event, EPPs' counsel has advised Ms. Singer that her claim appears to be in order and that they will ultimately request that the Court approve it.  Thus, her speculation is unfounded.

### ii.  Class Notice

Objectors contend that the Notice of these settlements was inadequate. Ms. Singer argues

that the notice program was discriminatory against women because the notice was published in "publications disproportionately read by men," namely *Sports Illustrated* and *Automotive News*. Singer provides no basis for her argument. Moreover, as detailed above, the notice program was broad and far reaching and included more publications than *Sports Illustrated* and *Automotive News*, such as *Field & Stream*, *People*, *Reader's Digest*, *Southern Living*, and *Woman's Day*.

Mr. Sweeney alleges the notice program was deficient because he personally did not receive notice, even though he registered on the Settlement Website. Sweeney did not, however, provide any sort of proof of this assertion, and in contrast, the Claims Administrator, Garden City Group, confirmed that it sent an email alert on November 28, 2016 to the email address provided by Sweeney that he used when he registered on the Settlement Website. Ex. 5, Castaneda Decl. ¶ 26. No other objectors have asserted that they did not receive the notice. Sweeney's knowledge of the settlements, and his submission of objections according to the terms of the notice, demonstrate that he did, in fact, receive notice and illustrates the effectiveness of the notice program used in this case. *See*

*In re Kendavis Holding Co.,* 249 F.3d 383, 387 (5th Cir. 2001) (determining that one "usually has adequate notice that his rights could be jeopardized and should take steps to protect his rights" when one knows of legal proceeding);

*Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956, 964 (3d Cir. 1983) (noting that objector's "vigorous objection to the settlement, and that of the other objectors, demonstrates that the notice selected was adequate").

The Court finds that the notice satisfied both due process and Rule 23(e)(1), in that it adequately informed class members of the nature of the pending actions, the terms of the Round 2 Settlements, and how to proceed to get more information. The notice explained how to object to the settlements and how to request exclusion. It informed members of their right to attend the final approval hearing. After careful review, the Court finds that the notice given was the best

17

notice practicable, given the circumstances of this case in that it was "reasonably calculated" to inform class members of the existence of the action and how to raise any objections to the settlements. *UAW v General Motors Corp.*, 479 F.3d 615, 629 (6th Cir. 2007).

### iii. Subclasses

The Ray/Hull Objectors argue that subclasses should be created, and separate counsel appointed for those subclasses, because the *Illinois Brick* repealer states each allow varying recoveries thereby creating an "intra-class conflict." No such conflict exists, as several courts have determined when rejecting this same argument. *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 348 (3d Cir. 2010) ("We disagree and find no merit in objectors' argument that state law differences created conflicts among class members that defeat adequacy of representation and preclude certification of a nationwide class."); *In re Budeprion XL Mktg. & Sales Litig.*, No. 09-MD-2107, 2012 WL 2527021, at *8 (E.D. Pa. July 2, 2012) (finding "no conflict present or any reason to suggest that the named Plaintiffs were unable or unwilling to vigorously advocate on behalf of the entire class" where the "litigation [was] based upon different states' laws"). It is common to approve allocation plans that provide for all indirect purchaser class members in *Illinois Brick*-repealer states on a share and share alike basis. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-MD-1827 SI, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) ("[A]*pro-rata* allocation has been used in many antitrust cases including in this District."); *In re Vitamins Antitrust Litig.,* No. 99-197, 2000 WL 1737867 at *6 (D.D.C. Mar.31, 2000); *In re Lloyds' Am. Trust Fund Litig.,* 2002 WL 31663577 at *19 (S.D.N.Y. Nov.26, 2002); *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302-03 (3d Cir. 2011) (variations in state antitrust laws do not defeat commonality or predominance, particularly in the context of settlement). The Court denies the invitation to require the creation of subclasses here.

### iv. Due Process Rights

Mr. Feury and the York Objectors argue that class members' due process rights have

been violated by the Court's case management order that treats the separately-filed cases for different automobile parts as separate cases. According to these objectors, the requirement that they separately file objections in the case docket for each case which is the subject of a settlement to which they object and ultimately incur the expense of separate appellate filing fees is unconstitutionally burdensome and is the result of "collusion" or a "strategic attempt by the parties to discourage class members from exercising their rights." Evidently, they claim that the Court should have consolidated these separately-filed actions into one case. But even if that were possible in light of the Supreme Court's decisions in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 42 (1998), and *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 906 (2015), it was not required here.

The case management plans reflect the Court's determination of what best serves judicial economy. They are not the product of any collusion. In fact, the Court reviewed the case management plans when EPPs previously moved the Court to consolidate eighteen of the cases included in this litigation. *See* Motion to Consolidate Claims and Amend Complaints, 12-cv-00203, ECF No. 131. The Court denied the motion for consolidation, finding that each of the individual cases had (1) different, albeit similar fact patterns; (2) different defendants; (3) different automotive parts; and (4) different conspiracies. *See* Order Denying Motion to Consolidate Claims, 12-cv-00203, ECF No. 162. As the Court explained

> First, because all of the Relevant Cases have been placed in the MDL, the risk of inconsistent rulings on legal issues is not a factor. Second, although the alleged conduct by Defendants follows a similar pattern, the facts are not the same. Third, the existence of different Defendants weighs against consolidation. Even though the Relevant Cases involve overlapping parties, there are twenty-two different Defendant Groups, six Settling Defendant Groups, and eighteen different product markets.

*Id*.

The Court concluded that "rather than simplify this already complex litigation, consolidation will serve only to confuse the legal claims/defenses of the parties and delay a

definite outcome for the parties." *Id.* (citing *Hasman*, 106 F.R.D. at 460). "Therefore, the Court decline[d] to consolidate the Relevant Cases pursuant to Rule 42(a), as it would not serve judicial economy or the convenience of the court and of the parties." *Id.* (citing *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1991)). The Objectors have presented no additional information or arguments to indicate otherwise. Indeed, the Yorks made precisely the same argument in response to show cause orders from the Sixth Circuit in connection with the Yorks' appeal of this Court's approvals of the Round 1 Settlements. The Sixth Circuit rejected the argument entirely. *See* Ex. 3, Order, Appeal No. 16-2025, ECF No. 62; Appeal No. 16-2085, ECF No. 43; Appeal No. 16-2086, ECF No. 36. The Sixth Circuit noted that each of the nineteen cases at issue in the Round 1 Settlements "retain their individual identity" and centralization of those cases for pretrial purposes by the MDL Panel "does not merge the actions into a single case." *Id.* The Court also expressly held that "[r]equiring appellants to either pay the required filing fee or move for pauper status does not violate due process." *Id.*

### v. Miscellaneous Objections

The Court received an objection regarding incentive awards for named class representatives. This objection is baseless because EPPs' Class Counsel have made no request for incentive awards. Settlement Class members will have the right to be heard on any application for incentive awards for class representatives made in the future. Further, the Court finds no basis for certain Objectors' argument that there is no value in the cooperation provisions or injunctive relief provided for by the settlements. Courts have widely accepted that both types of relief are valuable. *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) ("Courts approving partial settlements in antitrust class actions recognize the significant value of cooperation such as Home City agrees to provide in this case."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 294 (W.D. Tex. 2007) (noting that the "injunctive relief provided by the settlement has significant value to the class"). And as

discussed above, the discovery cooperation provisions have proven to be very valuable to the Settlement Classes here.

In addition, Certain Objectors raised objections that this Court overruled in connection with EPPs' previous Motion for Final Approval of Settlements. *See* Opinion and Order Granting Final Approval of Class Action Settlements, 12-cv-00103, ECF No. 497. The Court finds no reason to arrive at different conclusions.

Mr. Sweeney objects that the releases contained in the Round 2 Settlements release Defendants from future antitrust claims for new products. The releases here are nearly identical to the releases approved by the Court with respect to the Round 1 Settlements and are clearly limited to past conduct alleged in the applicable complaints and to the particular automotive part or parts at issue.   Indeed, they expressly preserve claims based on the purchase of "any automotive part other than" the automotive part or parts at issue in the settlements. The Court thus overrules this objection. Mr. Sweeney also argues that the Court should reject the Round 2 Settlements because there is presently no time frame for completing the administration of the settlements. There is no such requirement in the law, as Mr. Sweeney acknowledges, and the Court overrules this objection. Further, the Court again received an objection raising arguments about a potential *cy pres* distribution. But neither the Round 2 Settlements nor the proposed Plan of Allocation provide for any unclaimed funds to revert to the Round 2 Settling Defendants or third-parties. Therefore, objections raising distribution issues are inapplicable and premature at this time.

Mr. Feury argues that the predominance requirement under Rule 23 is not met and that the proposed classes are not ascertainable because class members cannot "specifically connect the multiple component parts with specific vehicles" to determine whether they are members of a settlement class. The Court previously overruled this objection, holding that "[t]he fact that an objector cannot personally identify whether his motor vehicle contained a part does not render

the criteria [of class membership] subjective." Case No. 12-cv-00103, ECF No. 497 at 19. Moreover, EPPs' Class Counsel has in fact provided a tool that allows potential settlement class members to easily determine whether the new vehicle they purchased or leased or the replacement part they purchased is included in the settlements and, thus, which class or classes they are members of. The tool appears on the homepage of the Settlement Website at www.AutoPartsClass.com. The Court overrules this objection.

Finally, the Court again received attempts by certain objectors to incorporate all other objections made to the Settlements. The Court strikes these attempts to join arguments as improper. In accordance with the Court's order, objectors must raise on their own any objections they wish to assert against the settlements.

The remaining objections raise challenges to the attorneys' fees requested by Class Counsel. Because an award of attorneys' fees is a matter separate and apart from determining whether a proposed settlement is fair, adequate, and reasonable, *see Bowling v. Pfizer*, 102 F.3d 777, 779 (6th Cir. 2006), the Court will issue a separate order regarding attorneys' fees that addresses those objections.

### 6. Risk of Fraud or Collusion

Courts presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *In re Packaged Ice*, 2011 WL 717519, at *12; Sheick, 2010 WL 4136958, at *19-20. Here, the parties have been engaged in adversarial litigation and protracted discovery. The negotiations leading to the settlements were conducted entirely at arm's length and often the agreements were reached only after many months of hard bargaining, often with the assistance of experienced mediators. The settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

### 7. Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quotation omitted).  In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the settlements. *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *5 (E. D. Mich. Dec. 12, 2013).  This factor also supports final approval.

In addition to addressing the merits of the proposed settlements, the Court must determine that the requirements for class certification under Rule 23(a) and (b) are met. In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the settlements. It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Int'l Union*, 2006 WL 1984363, at *3, *18; *In re Cardizem*, 218 F.R.D. at 516-19. The settlements meet the requirements of Rule 23(a) as well as the requirements of 23(b)(3) for settlement purposes.

## B.    The Settlement Classes Satisfy Rule 23(a)

To certify a class, Rule 23(a) and one subsection of Rule 23(b) must be satisfied.  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013).  Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. Pro. 23(a).

The Court finds that each factor is met for the reasons summarized below.

### 1.    Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."   Here, the Settlement Classes include millions of end-payors, geographically dispersed throughout the United States. The number and the geographical distribution throughout the United States makes joinder impracticable. Therefore, this factor is satisfied.

### 2.    Commonality

Next, a class action must implicate "questions of law or fact common to the class."  Fed. R. Civ. Pro. 23(a)(2).  "A certifiable class claim must arise out of the same legal or remedial theory," *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980) (citation omitted), which can be satisfied if the class members' claims share "[a] common nucleus of operative fact," that is, some "common question. . .at the heart of the case," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citation omitted).

Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual question about the existence, scope, and effect of the alleged conspiracy. These cases are no different.  For example, an issue common to each of the Settlement Classes is whether Settling Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of the automotive parts at issue in each of the cases. The Court finds that the commonality requirement is met here.

### 3.    Typicality

To satisfy the third prerequisite to class certification, "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. Pro. 23(a)(3).  A proposed class representative can satisfy this prerequisite if his or her  claim arises "from the same event or practice or course of conduct that gives rise to the claims of other class members." *Beattie v.*

*Century Tel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Here, typicality is satisfied because EPPs' injuries arise from the same wrong that allegedly injured each of the Settlement Classes as a whole.  Each of the members of a Settlement Class was a victim of the same conspiracy alleged in the applicable class complaint.

### 4.    Adequacy of Representation

To satisfy the fourth prerequisite for class-action status, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4).  This two-pronged inquiry, requires the Court to assess "the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general, and the adequacy of class counsel's representation."  *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 154, 168 (S. D. Ind. 2009) (citation omitted).

The representatives share the same interests as other class members and will fairly and adequately protect the interests of the class. In addition, class counsel is qualified, experienced and able to conduct the litigation. Accordingly, the Court finds that the named plaintiffs are adequate class representatives and that their counsel, Cotchett Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P., should be appointed to represent the classes pursuant to Federal Rule of Civil Procedure 23(g).

### C.    The Settlement Classes Satisfy Rule 23(b)(3)

Because EPPs meet the requirements of Rule 23(a), the Court turns to the additional requirement of Rule 23(b)(3)—that class plaintiffs demonstrate that common questions predominate over questions affecting only individual members and that class resolution is superior to other methods for the fair and efficient adjudication of the controversy. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Horizontal price-fixing cases are well-suited for class certification because proof of a conspiracy presents a common, predominating question, *In*

*re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008), that forms the basis from which all proposed Settlement Class members' injuries arise. The antitrust claims alleged herein involve the existence of shared issues related to liability, the scope of the conspiracy, and market impact. Shared issues predominate over any individual questions. Notably, the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class members.

Finally, a class action is the superior method to adjudicate these claims. The interest of Settlement Class members in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Therefore, for purposes of these Settlements, the Court finds that the prerequisites for a class action pursuant to Rule 23 have been met as to each of the Settlement Classes.

## V. CONCLUSION

For the reasons stated above, the Court hereby **CERTIFIES** the Settlement Classes for End-Payor Purchaser Plaintiffs. The Court's certification of the Settlement Classes as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. No party may cite or refer to the Court's approval of any Settlement Class as persuasive or binding authority in support of any motion to certify any class.

**IT IS FURTHER ORDERED** that the terms of the parties' Settlement Agreements for the Settlements are hereby incorporated as Orders of this Court.

**IT IS FURTHER HEREBY ORDERED** that Cotchett, Pitre & McCarthy, L.L.P., Robin Kaplan LLP, and Susman Godfrey L.L.P. are appointed class counsel.

Finally, the Court **GRANTS** Final Approval of the Settlements.

**IT IS SO ORDERED.**

Date:   July 10, 2017                                          s/Marianne O. Battani
                                                                        MARIANNE O. BATTANI
                                                                        United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 10, 2017.

                                                                        s/ Kay Doaks
                                                                        Case Manager