# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Wire Harness | : | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Bearings | : | 2:12-cv-00503 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | : | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generator | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Electronic Powered Steering Assemblies | : | 2:13-cv-01903 |
| In Re: Fan Motors | : | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | 2:13-cv-02803 |
| In Re: Spark Plugs | : | 2:15-cv-03003 |
| In Re: Automotive Hoses | : | 2:15-cv-03203 |
| In Re: Ceramic Substrates | : | 2:16-cv-03803 |
| In Re: Power Window Switches | : | 2:16-cv-03903 |
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | : : : | |

**ORDER REGARDING END-PAYOR PLAINTIFFS' MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
<u>LITIGATION EXPENSES</u>**

The above litigation duly came on for hearing before the Court on the End-Payor Plaintiffs' ("EPPs") motions for an award of attorneys' fees and reimbursement of litigation expenses.

The Court has reviewed the memorandum submitted by EPPs in support of their motion and has also reviewed all of the declarations and submissions relating to that motion filed with the Court. Pursuant to notice given to the Settlement Classes in accordance with the Court's orders, the Court held a hearing on April 19, 2017 to consider the motions.

Based on the entire record of these proceedings, and good cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1. The Court has granted final approval to the settlements referred to by the parties and the Court as the Round 2 Settlements in its Order Granting Final Approval to the Round 2 Settlements.[1] The Court has considered the submissions of the parties and the relevant case law and authority relating to the motions and concludes that awards of attorneys' fees and reimbursement of expenses to EPPs' counsel to be paid out of the proceeds of the Round 2 Settlements are appropriate under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure. Notice of the motions for fees and reimbursement of expenses was provided to the potential Settlement Class members pursuant to and in compliance with the orders of the Court by direct and published notice and a settlement website that identified and made available for inspection relevant documents and pleadings in this litigation. The notice given regarding the motions fully satisfied the requirements of Rule 23 and constitutional due process.

2. The Court has considered the reaction of class members to the fee and expense request. Out of the millions of potential class members who were given notice or who were made

---

[1] EPPs filed their motions for an award of attorneys' fees and reimbursement of litigation expenses in the cases that are being settled as to the Settling Defendants that are parties to the Round 2 Settlements. This Order will accordingly be separately entered as an order in each specific case docket to which it applies.

1

aware of the settlements and the fee and expense request, the Court received only five objections to EPPs' motions.

3. The Court engages in a two-part analysis when assessing the reasonableness of a petition seeking an award of attorneys' fees to be paid out of the proceeds of a class action settlement. *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). The Court first determines the method of calculating the attorneys' fees: it applies either the percentage-of-the-fund approach or the lodestar method. *Id.*; *Van Horn v. Nationwide Prop. & Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).

4. The Court has the discretion to select the appropriate method for calculating attorneys' fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, whichever method is used, the award of attorneys' fees need only "be reasonable under the circumstances." *Id.* The Court also analyzed and weighed the six factors described in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).

5. The Court will award fees to EPPs using the percentage-of-the-fund approach. This method of awarding attorneys' fees is preferred in this District because it conserves judicial resources and aligns the interests of class counsel and the class members. *Rawlings*, 9 F.3d at 515; *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008); *Cardinal*, 528 F.Supp.2d at 762 (the Sixth Circuit has "explicitly approved the percentage approach in common fund cases"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-2343, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014).

6. Based on the showing made by EPPs, the Court finds that these expenses were reasonably incurred and the Court hereby **GRANTS** EPPs' request for reimbursement of past

litigation expenses in the amount of $941,878.09. The past litigation expenses, as set forth in the declarations submitted by counsel for EPPs, shall be deducted on a *pro rata* basis from the settlement funds available in those cases.

7. The Court authorizes class counsel for the EPPs to pay the expenses of the settlement notice and claims administration (incurred and charged by Kinsella Media, LLC and Garden City Group, respectively) from the Round 2 Settlements on a *pro rata* basis.

8. Counsel for EPPs have requested a fee award equal to 27.5% of the net settlement funds remaining after the foregoing past litigation expenses have been deducted. The award requested is within the range of fee awards made by courts in this Circuit. *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the common fund); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19; *Skelaxin*, 2014 WL 2946459, at *1; *In re Southeastern Milk Antitrust Litig.*, No. 08-md-1000, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d, 521, 528 (E.D. Ky. 2010); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-CV-95, 2007 WL 3173972, at *4 (W.D. Mich. 2007); *Delphi*, 248 F.R.D. at 502-03; *In re National Century Financial Enterprises, Inc. Investment Litig.*, 2009 WL 1473975 (S.D. Ohio, May 27, 2009); *Kogan v. AIMCO Fox Chase*, L.P., 193 F.R.D. 496, 503 (E.D. Mich. 2000). These cases demonstrate that, contrary to the argument made by certain objectors, there is no requirement that the Court necessarily apply a declining fee percentage based on the absolute dollar amount of any of the settlements at issue. The Court notes that other federal courts have also rejected the so-called "mega fund" adjustment to fee awards based solely on the size of a settlement. Instead, consideration must be given to, among other things, the stage of the litigation when a settlement has been achieved and the labor and expense that were required to be incurred in order to achieve the settlement. *See Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210-11 (S.D. Fla. 2006).

9. Objectors Ray and Hull cite two examples of cases where courts have utilized a declining percentage approach: *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679 (N.D. Ohio 2015), *reconsideration denied*, No. 1:10 MD 2196, 2015 WL 12748013 (N.D. Ohio Dec. 21, 2015) and *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007). Both cases are easily distinguishable from the circumstances of this litigation. In *Cardinal Health*, plaintiffs requested a 24% fee award from a $600 million settlement fund, but the court found that "the requested lodestar multiplier of 7.89 is far beyond the range courts have found acceptable in other large securities actions." 528 F. Supp. 2d at 767. Still, the court determined that 18% was "a reasonable award" even after acknowledging that it "would yield a lodestar multiplier of six," which was "significantly above average," but which the court determined was "reasonable under the circumstances." *Id.* at 768. In *Polyurethane*, the court awarded a fee of 20% instead of the requested 30%, in part, because the court had previously granted three 30% fee awards pursuant to three previous requests. 135 F. Supp. 3d at 683, 691-92.

10. Here, as noted below, the Court has made interim fee awards equal to 20% of the Round 1 Settlements, and that award combined with the interim award made here yields a modest 1.11 multiplier of the total lodestar.

11. The Court has considered the six *Ramey* factors in weighing a fee award to counsel for the EPPs: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis [*i.e.*, the lodestar cross-check]; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1194–97.

12. The Court has carefully analyzed the settlements and applied the *Ramey* factors to EPPs' motion and concludes that the factors are met and justify an interim fee award to counsel for EPPs. The Round 2 Settlements collectively total approximately $379.4 million and provide

substantial cash and non-monetary benefits, including extensive discovery cooperation from all settling defendants and injunctive relief prohibiting certain conduct at issue in the litigation from all but one of the settling defendants subject to the Round 2 Settlements.

13. Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [obtain favorable outcomes for a class] in order to maintain an incentive to others," and counsel's success in complex antitrust litigation "counsels in favor of a generous fee." *Cardizem*, 218 F.R.D. at 534 (internal quotation marks omitted). The substantial recoveries obtained to date serve the strong public policy of holding accountable those who violate the antitrust laws, thereby promoting fair competition and honest pricing.

14. EPP Counsel have worked on a contingent basis and the results of this litigation have never been certain.

15. The legal and factual issues in this litigation are complex and the parties have zealously asserted their claims and defenses. EPP Counsel have asserted a number of claims under both federal and state antitrust, consumer protection, and unjust enrichment laws. Because EPPs' claims for damages and restitution are based on the laws of thirty states and the District of Columbia, they face additional substantial burdens. Likewise, issues attendant to serving and conducting discovery against numerous foreign defendants located around the world compound the complexity of this case.

16. The Court is satisfied that these settlements were the result of arms' length negotiations conducted in good faith by informed and experienced counsel.

17. The Court rejects the argument made by certain objectors that EPPs' counsel simply "piggybacked" off the United States Department of Justice ("DOJ")'s investigation. EPPs must prove several critical issues unique to their actions that the DOJ did not have the burden of proving, including (1) the amount of any overcharges resulting from the alleged conspiracies, (2) the nature and import of the economic and business relationships between parties occupying

different places in the chain of distribution and the relationship of defendants' sales to original equipment manufacturers ("OEMs"), OEMs' sales to dealers, and dealers' automobile sales to end-users, (3) measuring and tracing the pass-through of overcharges, and (4) class-wide impact and standing of indirect purchasers. EPPs' cases are also significantly broader than the government's cases. For instance: (1) EPPs assert claims against defendants that were not defendants before the government and included in grand jury indictments in criminal informations offered by the government or who did not plead guilty; and (2) EPPs' claims, in many instances, cover broader time periods and involve a broader scope than the claims asserted by the government.

18.   The *Ramey* factors and a cross-check of the lodestar incurred by counsel for EPPs suggest that EPPs are entitled to appropriate compensation to take into account the risks they assumed, the magnitude of work done, and the benefits achieved for the members of the Settlement Classes. Here, EPP Counsel performed a thorough analysis of all EPPs' attorney time submissions received to date and included detailed information about the resulting lodestar in EPPs' motions. The EPPs' attorney lodestar in this litigation totals $108,693,616.93 from March 23, 2012 through December 31, 2016, calculated in accordance with EPPs' counsel's customary current hourly rates.[2] These rates are justified given EPP counsels' many years of experience in prosecuting complex antitrust class actions. Further, the defendants in these cases are represented by some of the most prominent antitrust defense lawyers in the world. EPP counsel's

---

[2] The Court rejects the argument made by certain objectors that time included with the Round 1 Settlement fee request should not be included in the lodestar cross-check for the Round 2 Settlements. In calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that EPPs' counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the EPPs classes. *See Southeastern Milk*, 2013 U.S. Dist. LEXIS 70167, at *26-27 (rejecting objection based on the proposition that the calculation of class counsel's lodestar should be limited to work performed after the period covered by a prior fee award); *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000) (same).

hourly rates are in-line with the market. In each of the EPP plaintiffs' firms only the most senior attorneys list hourly rates above $700. These rates are well in line with the market, with recent reports explaining that senior lawyers at top law firms routinely charge well over $1,000. *See* Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, WALL ST. J., Feb. 9, 2016, available at https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 ("Despite low inflation and weak demand for legal services, rates at large corporate law firms have risen by 3% to 4% a year since the economic downturn").

19. Accordingly, the Court **GRANTS** an interim award of attorneys' fees to counsel for EPPs in the amount of 20% of the net settlement funds remaining after the foregoing past litigation expenses have been deducted. These attorneys' fees, totaling $75,691,877.98, shall be paid on a *pro rata* basis from the net settlement funds provided by each of the Round 2 Settlements currently before the Court.

20. As the Court indicated during the hearing on this motion, the Court reserves ruling on EPPs' request for additional fees from these settlements.

21. Using the lodestar cross-check methodology and reviewing the total fees awarded with the lodestar generated on these cases from March 23, 2012 to December 31, 2016, the 20% fee awarded results in a lodestar multiplier of 1.11.[3] Such a multiplier is well within, if not substantially below, the range of reasonable multipliers awarded in similar contingent fee cases. *See In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *14 (awarding attorneys' fees in the amount of one-third of a $19 million settlement fund, which equaled a multiplier of 3.01); *Bailey v. AK Steel Corp.*, No. 06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *8 (S.D. Ohio Feb. 28, 2008) (awarding attorneys' fees with a multiplier of approximately 3.01). This interim fee award is reasonable in light of the complexity of this litigation, the results

---

[3] The fee awarded in this motion, $75,691,877.98, combined with the $44,933,070 in fees previously awarded from its Round 1 Settlements, results in a 1.11 multiplier of the total attorneys' fees lodestar requested by EPP's counsel.

7

achieved for the class members to date, the work and labor of EPP Counsel, and the risks assumed by counsel for EPPs.

22. Finally, the Court overrules objections that any fee award should not be made until after the conclusion of the claims administration process. The Sixth Circuit's recent decisions in *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016), *cert. denied sub nom.*, *Blackman v. Gascho*, No. 16-364, 2017 WL 670215 (U.S. Feb. 21, 2017), *cert. denied sub nom.*, and *Zik v. Gascho*, No. 16-383, 2017 WL 670216 (U.S. Feb. 21, 2017) demonstrate that fee awards need not be tied to amounts class members are actually paid. *See id.* at 279 (affirming award of attorneys' fees where amount awarded was greater than the amount class members ultimately claimed and received). In doing so, the Court declined to follow *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), a Seventh Circuit decision upon which certain of the objectors rely. The Sixth Circuit held in *Gascho* that, under *Boeing v. Van Gemert*, 444 U.S. 472, 480 (1980), the amount made available to the class is what is important, even if it that amount is not ultimately claimed. 822 F.3d at 279. *Gascho* is all the more noteworthy because the net settlement at issue there was a claims-made settlement, unlike the settlements at issue here where the entire net settlement funds will be paid to class members who submit valid claims, with no reversion to the defendants. *Id.* at 275. In that respect both *Gascho* and *Pearson* are far different from the settlements achieved in this case.

23. Co-Lead Settlement Counsel for EPPs are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of EPPs in accordance with Co-Lead Settlement Counsel's assessment of each firm's contribution to the prosecution of these actions and settlements at issue on this motion.

**IT IS SO ORDERED.**

Date:  July 10, 2017                              s/Marianne O. Battani
                                                  MARIANNE O. BATTANI
                                                  United States District Judge

8

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 10, 2017.

s/ Kay Doaks
Case Manager
